WHITE ET AL., FORMER COLLECTORS OF INTERNAL
REVENUE, *v.* WINCHESTER COUNTRY CLUB.

No. 63.   Argued December 12, 1941.—Decided January 12, 1942.

*Mr. J. Louis Monarch,* with whom *Assistant Solicitor General Fahy, Assistant Attorney General Clark,* and *Messrs. Edward First* and *Richard S. Salant* were on the brief, for petitioners.

*Mr. Charles W. Mulcahy,* with whom *Mr. John P. Carr* was on the brief, for respondent.

MR. JUSTICE JACKSON delivered the opinion of the Court.

We must decide whether members' payments to the Winchester Country Club for certain "privileges" constituted "dues or membership fees" subject to the tax imposed by § 501 of the Revenue Act of 1926, 44 Stat. 9, 92, as amended by § 413 of the Revenue Act of 1928, 45 Stat. 791, 864, on amounts paid "as dues or membership fees to any social, athletic, or sporting club or organization, if the dues or fees of an active resident annual member are in excess of $25 per year."

Since 1929 and during the period here in question the Club's by-laws provided for "Annual Dues" of $50, which entitled a member to all the privileges of the Club except golf. By paying $35 more, for "Limited Privileges," a member became entitled to play golf during the year, except on specified days; by paying $50, for "Full Privileges," he got the privilege of playing at any time during the

year. All but a small portion of the members acquired golf privileges of one sort or the other.

Various forms of "Family Privileges," entitling one or more of a member's family to use the clubhouse and to play tennis and golf, could be had by a member upon payment of specified additional sums, which were less if he had golf privileges than if he did not.

The club year began January first and, according to the by-laws, "dues and fees" were payable on March first. The practice was to bill members during March for "dues" and "privileges" for the year. Privileges were acquired informally, the practice being to let the Club's officers know either orally or in writing what privileges were desired. A member was billed for the privileges he had previously held if he had not indicated that he no longer desired them, but if he later gave notice that he did not desire a given privilege, no attempt was made to collect the amount billed for it. If a member requested priviliges prior to August first, he was billed for the full year; for privileges thereafter requested he was billed for only half a year. Suitable adjustment was also made if privileges were dropped in the middle of the year.

During the period from November 27, 1931, to January 9, 1935, taxes in the amount of $9,211.25 were exacted on account of payments to the Club for the various "privileges" mentioned above. On November 16, 1935, the Club duly filed claims for refund on behalf of its members, and, after the Commissioner of Internal Revenue had rejected them, it instituted suits in the United States District Court for the District of Massachusetts against the three Collectors of Internal Revenue to whom the taxes had been paid. The District Court entered judgments for the Club, and the Circuit Court of Appeals for the First Circuit affirmed them upon consolidated appeal. 117 F. 2d 146. Certiorari was granted in this

case and in *Merion Cricket Club* v. *United States,* decided by the Court of Appeals for the Third Circuit, 119 F. 2d 578, because of an asserted conflict between the two decisions. 313 U. S. 555; 314 U. S. 589.

The generality of "dues or membership fees," the words by which the governing statute designates the payments upon which the tax is laid, necessitates consideration of their legislative background. Earlier Revenue Acts—those of 1917, 1918, 1921, and 1924—had laid a tax in the same terms upon payments to clubs such as the respondent.[1]

The Treasury construed these words on several occasions not long after they were first employed in these Revenue Acts. Treasury Regulations 43 (Part 2), Art. 12, issued under the Revenue Act of 1918, and approved March 28, 1919, gave as examples of their applicability the following: "(5) A certain golf club's dues are $15 per year. Of this amount $10 is expended in the purchase for the member of a season ticket to a municipal golf course. The whole $15 is, nevertheless, taxable as dues. (6) A certain golf club charges a 'green' fee of $1 for each guest that uses the course. Such a fee is not paid 'as dues or membership fees,' and is, therefore, not taxable as such. (7) The members of a certain curling club pay annual dues of $20. By the payment of $10 extra per year the privilege of skating on the club's rink can be secured for the member's family. A payment of this extra $10 is taxable as a membership fee." The same examples are given in this Article as revised on December 3, 1920, with the addition of the following example: "(13) A certain golf club, the dues and fees of which are taxable, issues to

---

[1] § 701 of the Revenue Act of 1917, 40 Stat. 300, 319; § 801 of the Revenue Act of 1918, 40 Stat. 1057, 1121; § 801 of the Revenue Act of 1921, 42 Stat. 227, 291; § 501 of the Revenue Act of 1924, 43 Stat. 253, 321.

wives of members cards entitling them to the use of the course for one year, making a charge of $10 therefor. The amounts paid for such cards are taxable."

These examples were retained in three subsequent editions of the Regulations, issued under the Revenue Acts of 1921 and 1924, which also added the generalized statements that subject to the tax "are extra charges which are imposed upon members for the privilege of using certain additional facilities for a period of time, as, for example, an additional charge of $60 per annum imposed upon members of a country club for the privilege of using the golf links. A 'greens fee' charged to a guest is not taxable, unless the right or privilege granted in return is for a period of time, such as a season." [2]

Further, albeit slight, evidence of the Treasury's view is found in S. T. 357, Cum. Bul. I–1, p. 434, as follows: "Where a payment for the use of golf links or similar privilege afforded by a club . . . covers a period of time, such as a season, it is subject to the tax on dues . . . This applies alike to payments made by members and nonmembers."

On December 30, 1925, the United States District Court for the District of Massachusetts held, however, that a charge to a member for the use of a club's golf course for a period of six months was not included within the words "dues or membership fees," on the ground that they "were meant to cover only fixed and definite charges applicable to all members of each particular class of membership." *Weld* v. *Nichols*, 9 F. 2d 977.

No appeal from this decision was perfected, a bill of exceptions being withdrawn by the Government on March 23, 1926. The Revenue Act of 1926 which, like its prede-

---

[2] Treasury Regulations 43 (Part 2), Art. 9, as issued January 11, 1922 under the Revenue Act of 1921, and as revised April 18, 1922; Treasury Regulations 43 (Part 2), Art. 9, under the Revenue Act of 1924.

cessors, contained the words "dues or membership fees" without any definition thereof, was approved on February 26, 1926. Thereafter, and on May 21, 1926, a revision of the Regulations was promulgated which omitted all the matter quoted above except examples (5) and (6).[3] The Revenue Act of 1928, containing an express definition of "dues and membership fees" in a respect not here material,[4] was enacted while the Regulation was in the same form,[5] and before any court had decided another case like the *Weld* case. Subsequent editions of the Treasury Regulations, issued after the enactment of the Revenue Act of 1928 and before any further statutory treatment of the subject, retained example (6), but substituted for example (5) the following: "A certain golf club has two classes of members. Class A members pay $40 per year dues and are entitled to the full privileges of the club, including the use of the golf course. Class B members pay $25 per year dues and are entitled to the privileges of the clubhouse, but do not enjoy the privilege of the golf course. The total dues of $40 paid by class A members are subject to tax, and, since the dues of such members are in excess of $25 per year, the dues of $25 paid by class B members are also subject to the tax." [6]

---

[3] Treasury Regulations 43 (Part 2), Art. 9, under the Revenue Act of 1926.

[4] Section 413 of the Revenue Act of 1928, 45 Stat. 791, 864, provided:

"(d) As used in this section, the term 'dues' includes any assessment irrespective of the purpose for which made; and the term 'initiation fees', includes any payment, contribution, or loan required as a condition precedent to membership, whether or not any such payment, contribution, or loan is evidenced by a certificate of interest or indebtedness or share of stock, and irrespective of the person or organization to whom paid, contributed, or loaned."

[5] Treasury Regulations 43 (Part 2), Art. 9, under the Revenue Act of 1926, as revised May 27, 1927.

[6] Treasury Regulations 43, Art. 40 (1928 and 1932 Rev.); Treasury Regulations 43, § 101.41 (1940 Ed.).

38

During a period after the decision of the *Weld* case, the Treasury apparently sought to determine taxability under the doctrine of that case, rather than according to its own prior views. In 1930, and before the beginning of the period involved in this case, there issued, however, a General Counsel's Memorandum [7] which, while paying lip service to the doctrine of the *Weld* case, construed and applied it in such manner as to require the imposition of a tax on facts apparently substantially similar to those before us here. The Commissioner of Internal Revenue has consistently followed this decision since its promulgation. Efforts were made in cases subsequently litigated in the courts to obtain decisions fixing the meaning of "definite and fixed charge" and "particular class of membership" as used in the statement of the *Weld* doctrine, resulting in holdings of taxability in three instances,[8] and of nontaxability in three besides the present.[9] *Foran* v. *McLaughlin,* 59 F. 2d 158, certiorari denied, 287 U. S. 637, the first court decision rendered after the decision of the *Weld* case itself, held that the payments in question did constitute dues or membership fees. Since the decision of this case, the Commissioner has allowed no claims for refunds on the basis of the *Weld* case, as he had done in some previous instances.

Section 543 (b) of the Revenue Act of 1941, c. 412, 55 Stat. 687, 711, the first statutory treatment of the subject since the Revenue Act of 1928, explicitly defined "dues," and thereby clearly included the types of pay-

[7] G. C. M. 7505, Cum. Bul. IX–2, p. 414.

[8] *Foran* v. *McLaughlin,* 59 F. 2d 158, certiorari denied, 287 U. S. 637; *Merion Cricket Club* v. *United States, supra; Hardt* v. *McLaughlin,* 25 F. Supp. 684.

[9] *Baltimore Country Club* v. *United States,* 7 F. Supp. 607; *Williamson* v. *United States,* 12 F. Supp. 26; *Philadelphia Cricket Club* v. *United States,* 30 F. Supp. 141.

ments here in question.[10]   The legislative history of this redefinition is inconclusive in respect of the earlier intention of Congress.[11]   The action of Congress in thus explicitly defining the existing statutory term is at least as consistent with dissatisfaction on its part with the course of judicial decision as to its meaning as with the existence of an intention to change the law.   If any inference is to be drawn from this spelling out of the meaning of "dues," it is one supporting the validity of the construction set forth and adhered to by the Treasury before the *Weld* case, which was substantially adopted by the newly enacted definition.   Compare *Mason* v. *Routzahn*, 275 U. S. 175, 178.

Nor do we find the reënactments of the words "fees or membership dues," while the *Weld* case was on the books, to be controlling, or even significant, as expressions of Congressional intent.   Passage of the Revenue Act of 1926 so soon after the decision of the *Weld* case, and while the Treasury Regulation dealing in terms with the same problem was still in force on the books, of course avails the respondent nothing.

So far as we have been able to ascertain, the Treasury's revision of the Regulation was made in the belief that it was bound to follow the *Weld* case; we cannot assume that the Treasury did more than bow to the District Court. The revision of the Regulation is of ambiguous import, but in any event it signifies no voluntary change in the opinion of the Treasury as to the meaning of the statute. Even if we could assume that the Treasury made a complete and voluntary about face after the decision of the

---

[10] "The term 'dues' includes any assessment, irrespective of the purpose for which made, and. any charges for social privileges or facilities, or for golf, tennis, polo, swimming, or other athletic or sporting privileges or facilities, for any period of more than six days . . ."

[11] See Sen. Rept. 673, 77th Cong., 1st Sess., p. 48; H. R. Rept. 1040, 77th Cong., 1st Sess., pp. 31–32, 54; Statement by the Chairman of the House Ways and Means Committee, 87 Cong. Rec. 7614.

*Weld* case and before the enactment of the 1928 Act, and that the new doctrine came within the scope of the cases applying the "reënactment rule," [12] this would be bootless to the petitioner, whose claim covers a period commencing after the 1930 decision of the General Counsel of the Bureau of Internal Revenue, *supra,* which favors the imposition of the tax here. If this decision marked a departure from doctrine espoused by the Treasury after the *Weld* case, it was a departure which was within the power of the Treasury to make for the period in question.[13]

Nor was the *Weld* case itself in any sense adopted by the enactment of the 1928 Act. It stood alone when that Act was passed, and "one decision construing an act does not approach the dignity of a well settled interpretation." [14] It was patently incomplete as an exposition of doctrine, and as a District Court decision it had quite restricted direct applicability.

Having tested respondent's proffered constructional crutches and found them unsound, we must decide the meaning of the statute without their aid. We reject the doctrine of the *Weld* case as being intrinsically unsound, and as having been demonstrated by subsequent cases to be unworkable in practice. We also reject as an aid to decision the inquiry made in several cases as to whether the payment in question was in consequence of a "recurring contractual obligation," [15] since whether such is the case depends merely upon the mechanics of the particular club's finances—a properly immaterial factor.

[12] But compare *United States* v. *Missouri Pacific R. Co.,* 278 U. S. 269, 280; *Burnet* v. *Chicago Portrait Co.,* 285 U. S. 1, 16.

[13] *Morrissey* v. *Commissioner,* 296 U. S. 344; *Helvering* v. *Wilshire Oil Co.,* 308 U. S. 90; *Helvering* v. *Reynolds,* 313 U. S. 428.

[14] *United States* v. *Raynor,* 302 U. S. 540, 552; cf. *Federal Communications Commission* v. *Broadcasting System,* 311 U. S. 132; *Helvering* v. *Reynolds, supra.*

[15] *Foran* v. *McLaughlin, supra; Hardt* v. *McLaughlin, supra; Philadelphia Cricket Club* v. *United States, supra.*

Consideration of the nature of club activity is a necessary preliminary to the formulation of a test of what constitutes a "due or membership fee." So far as finances go, the fundamental notion of club activity is that operating expenses are shared without insistence upon equivalence between the proportion of an individual's contributions and the proportion of the benefits he receives.[16] Thus, on the one hand, payment of the price of an individual dinner at the club dining room or of a single round of golf lacks the element of making common cause inherent in the idea of club activity. But, on the other hand, payment for the right to repeated and general use of a common club facility for an appreciable period of time has that element and amounts to a "due or membership fee" if the payment is not fixed by each occasion of actual use. Such was the case here, and we therefore hold that the payments in question were subject to the tax.

These are, in substance, the views expressed by the Treasury shortly after "dues or membership fees" was first employed in the Revenue Acts, and consistently pressed by the Treasury, except as it thought judicial authority dictated otherwise. Its substantially contemporaneous expressions of opinion are highly relevant and material evidence of the probable general understanding of the times and of the opinions of men who probably were active in the drafting of the statute. As such, they are entitled to serious consideration, independently alike of reënactments of the statute while it was in force on the books and of any temporary abandonment in consequence of disregard by judicial decision.[17]

*Reversed.*

MR. JUSTICE ROBERTS took no part in the decision of this case.

---

[16] See *Merion Cricket Club* v. *United States*, 119 F. 2d 578–580.

[17] Compare Griswold, A Summary of the Regulations Problem, 54 Harvard Law Review 398.