### UNITED STATES v. COLFAX GRAIN GROWERS, Inc.
#### No. 11203.

Circuit Court of Appeals, Ninth Circuit.

Oct. 8, 1946.

Harvey Erickson, Asst. U. S. Atty., of Spokane, Wash., Thomas R. Winter, Sp. Asst. to Chief Counsel, B.I.R., of Seattle, Wash., Douglas W. McGregor, Asst. Atty. Gen., and Sewall Key, A. F. Prescott, and Norman S. Altman, Sp. Assts. to Atty. Gen., for appellant.

Donald L. Burcham, of Oakesdale, Wash., for appellee.

Before DENMAN, BONE, and ORR, Circuit Judges.

ORR, Circuit Judge.

The question presented by this appeal is whether a farmers' cooperative association is required to pay social security taxes on its employees who perform services in connection with the warehousing, handling, grading and storage of agricultural commodities produced by both members and non-members of the cooperative when more than half the services rendered are performed on products of members of the cooperative association.

Appellee, to whom we shall hereafter refer as taxpayer, was incorporated in the state of Washington as a farmers cooperative association. It paid social security taxes on its employees engaged in the warehousing and above-mentioned activities in 1940, 1941 and 1942. Claims for refund of these taxes were rejected by the Commissioner of Internal Revenue, and this suit was then brought by taxpayer to recover the taxes paid.

Appellant, hereafter referred to as the Government, entered a counterclaim for an amount approximately equalling a credit previously allowed by the Government for contributions paid by taxpayer to the Washington State Unemployment Fund. These contributions were later recovered

by taxpayer in a proceeding brought in the appeal tribunal of the Unemployment Compensation Division of the state of Washington. That tribunal held that the services herein involved were agricultural labor and, hence, exempt. The theory of the Government's counterclaim is that although § 1601(a) (1) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 1601, permits a taxpayer to credit against the federal tax the amount of contributions *paid* by him to a state fund, a taxpayer cannot claim this credit where, as here, the state has refunded to the taxpayer the contributions previously paid to the state.

The employees of taxpayer involved here received wheat and other grain of both members and non-members of taxpayer, at taxpayer's warehouses and elevators, weighed and graded it, put it in bins or stacked the wheat in sacks. The products of members and non-members were treated exactly alike and the undisputed evidence is that the non-member business of taxpayer varied between 27% and 38% of the total business done by taxpayer during the three years in question here.

Under § 1600 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 1600, employers are required to pay a tax on the wages paid to individuals in their employ "during the calendar year with respect to employment * * *.".

Under the definition of "employment" in § 1607 of the code, agricultural labor of the type performed here is exempt from the tax "only if such service is performed as an incident to ordinary farming operations * * *". Internal Revenue Code, § 1607(c) (1), (*l*) (4), 26 U.S.C.A. Int.Rev. Code, § 1607(c), (1) (*l*) (4). This definition of "agricultural labor" was added by amendment in 1939, effective January 1, 1940.[1] The applicable regulations [2] dealing with this section state:

"Generally services are performed 'as an incident to ordinary farming operations' within the meaning of this paragraph if they are services of the character ordinarily performed by the employees of a farmer or of a farmers' cooperative organization or group as a prerequisite to the marketing, in its unmanufactured state, of any agricultural or horticultural commodity produced by such farmer or by the members of such farmers' organization or group. Services performed by employees of such farmer or farmers' organization or group in the handling, planting, drying, packing, packaging, processing, freezing, grading, storing, or delivering to storage or to market or to a carrier for transportation to market, of commodities produced by persons other than such farmer or members of such farmers' organization or group are not performed 'as an incident to ordinary farming operations.' "

The District Court found that between 27% and 38% of taxpayer's business was with non-members but decided that such business with non-members did not cause taxpayer to lose its exemption since the so-called 50% standard applied. In the instant case more than 50% of taxpayer's business concededly was done with its own members. The District Court gave judgment for taxpayer for the full amount prayed, and denied the Government's counterclaim.

The Government contends that the Regulations, by defining the statutory terms "agricultural labor" and "service performed as an incident to ordinary farming operations", as not including services performed by employees of farmers cooperatives on the products of non-members, specifically prevent recovery by taxpayer in this suit and argues that because taxpayer's non-member business amounted to between 27% and 38% of the total business during the years in question, taxpayer's employees "do not qualify for exemption as 'agricultural labor', because they devoted a substantial portion of their services to the agricultural products produced by non-members of the cooperative."

It is the Government's theory that a cooperative doing any substantial non-member business does not come within the exemption from social security taxation granted by Congress.

---

[1] 53 Stat. 1360, 1396.

[2] Treasury Regulations 107, § 403.208 (e) (1) 1940.

We do not agree. Farmers' cooperatives have long been granted special favored treatment by Congress in taxation and other fields, and in all such statutes the cooperatives given this favored treatment are cooperatives where the non-member business does not exceed 50% of the total business done.[3]

"So far as the Congress is concerned, the 50 per cent provision has been interwoven into our law through many and varied and repeated enactments." Bowles v. Inland Empire Dairy Association, D.C. E.D.Wash., 53 F.Supp. 210, 211, 217.

Nothing appears in the Social Security Act which indicates that Congress intended to depart from its prior practice of favoring a cooperative whose business with non-members is less than 50 per cent.

Indeed, so far as the Congressional intent may be gleaned from the House and Senate Committee reports on the 1939 amendment adding the definition of "agricultural labor" (§ 1607(*l*) of the Internal Revenue Code) it is clear that Congress meant the 50 per cent standard to apply in determining whether labor performed for a farmers' cooperative was to be exempt agricultural labor or not.

The House and Senate Reports,[4] in identical language, after declaring that "The expression 'as an incident to ordinary farming operations' is, in general, intended to cover all services of the character described * * * which are ordinarily performed by the employees of a farmer or by employees of a farmers' cooperative organization or group as a prerequisite to the marketing, in its unmanufactured state, of any agricultural or horticultural commodity produced by such farmer or by the members of such organization or group," go on to state that, "To the extent that such farmers, organizations, or groups, engage in the handling, etc., of commodities other than those of their own production or that of their members, such handling, etc., is not regarded as being carried on 'as an incident to ordinary farming operations.' In such a case the rules set forth in subsection (c) of this section apply."

The subsection (c) referred to is in the Old Age Insurance Law and is identical with subsection (d) of § 1607 of the Internal Revenue Code, relating to the Unemployment Compensation Law, herein involved. That latter subsection, applying as it does the 50% standard to determine whether services which, in part, constitute taxable "employment" under the act are to be wholly taxed, when read with the House and Senate Committee reports above quoted, clearly indicates the congressional intent to grant tax exemption to the same type of cooperatives as favored in other statutes, namely, a cooperative where non-member business does not exceed 50% of the total business done.

The applicable Regulations,[5] relied on by the Government to support its contentions, closely follow the language of the committee reports except in one regard. The committee reports declare that where employees of cooperatives handle commodities produced by non-members the "rules set forth in subsection (c)," [which, as we have said, in effect applies the 50% standard to determine whether an activity constitutes taxable employment] shall apply. But the Regulations are silent on what rules shall apply in cases where employees of cooperatives handle commodities of non-members.

Thus, the Regulations not only do not forbid the application of the customary 50% standard to determine whether cooperatives are entitled to the tax exemption, but the Regulations do not set any standard to determine that; consequently they do not require the interpretation given them by the Government, namely, that any substantial non-member business will cause a cooperative to lose its tax exemption.

 And while it is true that administrative interpretations and regulations are to be accorded great weight by the courts

---

[3] See, 26 U.S.C.A. Int.Rev.Code, § 101 (12), Income Tax exemption; 7 U.S.C. A. § 291, The Capper-Volstead law—immunity from anti-trust laws; 12 U.S. C.A. § 1141j, Agricultural Marketing Act.
[4] House Ways and Means Committee Report to accompany HR 6635, 76th Congress, 1st Session; Senate Finance Committee Report No. 734, 76th Congress, 1st Session.
[5] See footnote 2.

in construing statutes[6] because of the superior knowledge of administrative officers of administrative needs,[7] we cannot construe a regulation so as to defeat the intent of Congress as we think it is expressed in committee reports hereinbefore quoted.

Here the Regulation so closely conforms to the House and Senate Committee explanations of the statute that it is a fair assumption that the committee reports were at least before those who drafted the Regulations but in drafting the Regulations the reference in said committee reports to subsection (c) seems to have been ignored. The Regulations, read with the committee reports, are consistent with the congressional intent expressed in those reports, and indicate clearly that the 50% standard, applied so frequently to cooperatives in the past,[8] was intended to be applied here.

This conclusion is fortified by the fact that nearly all cooperatives do a substantial amount of non-member business,[9] which fact would render meaningless the provision for the social security tax exemption under the interpretation contended for by the Government. This statement is based on the reports cited in footnote 9 which show that of 2614 grain cooperatives, only 233 did 90% or more of their total business with members which, under the Government's theory, would cause the remaining 2381 cooperatives to lose their social security tax exemption.

Furthermore, it is not entirely accurate to classify the business done by taxpayer here into "member" and "non-member." The record recites that any dividend payable to a non-member patron of taxpayer is not paid in cash, but is applied to the purchase by that patron of a share of stock in the cooperative. It is provided by taxpayer that when sufficient dividends have been placed to the credit of "non-members" they are admitted to membership if otherwise eligible. Thus, while the patrons here are technically "members" and "non-members," the latter have an expectancy in shares of stock in the cooperative and by dealing with the cooperatives and being otherwise eligible, acquire full legal ownership. So it does not follow that business transacted by taxpayer with "non-members" is in the same category as business done with strangers who have no expectancy of an interest in the cooperative.

The Government contends that a tax exemption from a remedial statute such as the Social Security Law under consideration here, must be construed strictly against the taxpayer. This would be true if there were doubt as to the congressional intent to grant exemption from Social Security taxes to a cooperative which does less than half of its total business with non-members. But when the congressional intent, expressed in its committee reports, is clear, as it is here, we need not rely on or refer to rules designed to aid us only in the construction of statutes of doubtful meaning or applicability. The judgment is affirmed.

Affirmed.

---

[6] White v. Winchester, 315 U.S. 32, 41, 62 S.Ct. 425, 86 L.Ed. 619; Skidmore v. Swift, 323 U.S. 134, 139–40, 65 S.Ct. 161, 89 L.Ed. 124.

[7] Sanford v. Commissioner, 308 U.S. 39, 52–3, 60 S.Ct. 51, 84 L.Ed. 20.

[8] See footnote 3.

[9] See "Cooperative Grain Marketing in the U. S." Circular No. C-122, p. 7, Farm Credit Administration, January 1941; and "A Statistical Handbook of Farmers' Cooperatives," pp. 82–85, Farm Credit Administration, Bulletin No. 26, November, 1938.