## UNITED STATES v. KOCMOND.

### No. 10644.

United States Court of Appeals
Seventh Circuit.

Dec. 23, 1952.

Rehearing Denied Jan. 9, 1953.

Charles A. Bellows, Chicago, Ill., for appellants.

Otto Kerner, Jr., U. S. Atty., Joseph E. Tobin, Asst. U. S. Atty., Chicago, Ill., Paul Steffy, Attorney Federal Security Agency, Washington, D. C., of counsel, for appellee.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

On July 2, 1951, the United States Attorney filed a criminal information charging the defendants Charles C. Kocmond, Matt Klarsch and Robert Klotz, doing business as partners under the trade-names "K & S Dog Food" and "Metropolitan Distributing Company," with violation of 21 U.S.C.A. § 331(k), 343(a), (e) (1), (i) (1), in that they had sold and delivered horse meat without complying with the labeling requirements of the respective sections of the statute mentioned. A jury trial resulted in a verdict of guilty and judgment imposing a fine upon defendants and committing each of them to the custody of the Attorney General of the United States for a period of nine months. In their appeal defendants contend that they did not misbrand the commodity or otherwise violate the pertinent provisions of the statute.

The parties stipulated that defendants, between June 22 and June 27, 1950, received substantial quantities of horse meat shipped

in barrels in interstate commerce from Jamestown, North Dakota, by the Jamestown Packing Company, consigned to the partnerships in Oak Park, Illinois; that at the time of shipment and delivery and while the meat was held for sale by defendants, the barrels were labeled on their burlap covers: "Jamestown Packing Company Boneless Horse Meat"; that a green label was attached to the side of each barrel reading "Domestic Horse Meat or Horse Meat Products," and that there were stenciled on the side of each in green ink the words "Horse Meat."

This stipulation was supplemented by parol evidence which, in its aspects most favorable to the government, shows that when an inspector for the Food and Drug Administration, in the performance of his official duties, visited defendants at their place of business, he saw them removing the meat from the barrels, labeled as aforesaid, cutting from the meat the federal stamps showing inspection of horse meat and placing the merchandise in other barrels bearing no indication that the contents were horse meat. At the same time, defendants' employee was scraping the words "horse meat" from the barrels. Five barrels then in defendants' cooler and certain others were, defendants reported, a portion of an order for horse meat received from the Lake County Packing Company of Lake Zurich, Illinois. These containers, when packed and ready for delivery, bore no notice that they contained horse meat, but the words "chucks" and "chunks" were placed on them and were the only labels on them when they were taken from defendants' place of business to the purchaser's packing plant. Three witnesses testified that chucks and chunks, in the absence of other explanation, are commonly known as beef.

At the time when the packing company purchased this meat, its representatives requested of defendants that, before the commodity was delivered, it be trimmed and repacked. The invoice price of the meat had been paid on the date the inspector first visited defendants' place of business. The next day the packing company picked up the merchandise, repacked in barrels bearing no labels, as we have seen, other than those of "chucks" and "chunks," and took it to its place of business in Lake Zurich. When, shortly later, the inspector visited the packing company plant, he found there ten barrels containing horse meat bearing no labels other than those of "chucks" and "chunks," six of which he identified as part of those he had seen at defendants' plant, and which, they had told him, had been sold to the packing company.

Section 331(k) Title 21 U.S.C.A. forbids "The alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of, or the doing of any other act with respect to, a food, drug, device, or cosmetic, if such act is done while such article is held for sale (whether or not the first sale) after shipment in interstate commerce and results in such article being adulterated or misbranded." It is not disputed that defendants did alter, mutilate and destroy all of the labels on the barrels indicating in any way that the content was horse meat, but, say defendants, they did not violate this section because their acts in this respect did not occur while the articles were held for sale. In other words, they insist that, inasmuch as the merchandise had previously been sold to the Lake County Packing Company and had been paid for, the title to the property had passed to the purchaser so that defendants no longer "held it for sale." However, we are not concerned here with the niceties of the mechanics governing the completion of sales of personal property. We are concerned with whether or not defendants, whether they were then the owners of the merchandise or not, did remove the labels while the goods were still held for sale. There is no contention that the packing company purchased the merchandise for its own consumption. It may well be that defendants had transferred their title to the packing company, but they had agreed that, as a part of the contract, they would unpack the barrels, cut off the horse meat inspection stamps and repack the merchandise in unlabeled barrels. Whether it was the packing company's request or the defendants'

own suggestion that the labels denoting the true contents should be removed is wholly immaterial. The telling fact is that defendants removed the labels before the goods had reached the ultimate consumer.

It matters not whether the Lake County Packing Company was defrauded or deceived, for the statutory requirement is that at the time the merchandise reaches the ultimate consumer it shall be so labeled as to indicate its true contents. See United States v. Sullivan, 332 U.S. 689, 68 S.Ct. 331, 335, 92 L.Ed. 297, where the court said: "But the language used by Congress broadly and unqualifiedly prohibits misbranding articles held for sale after shipment in interstate commerce, without regard to how long after the shipment the misbranding occurred, how many intrastate sales had intervened, or who had received the articles at the end of the interstate shipment. * * The words of paragraph (k) 'while such article is held for sale after shipment in interstate commerce' apparently were designed * * * to extend the Act's coverage to every article that had gone through interstate commerce until it finally reached the ultimate consumer." The purpose is to inform and protect the ultimate consumer. United States v. Dotterweich, 1943, 320 U.S. 277, 283, 64 S.Ct. 134, 88 L.Ed. 48; Arner Co. v. United States, 1 Cir., 1944, 142 F.2d 730, certiorari denied, 1944, 323 U.S. 730, 65 S.Ct. 66, 89 L.Ed. 586. That Congress had such an intention is shown by H. R. Rep. No. 807, 80th Cong., 1st Sess. pp. 3, 5 (1947), where the committee stated that the purpose was that "the integrity of the products be preserved, so far as possible, up to the time of purchase by the ultimate consumer."

■ Defendants have urged in their briefs that barrels are not packages within the meaning of Section 343(c) of the Federal Food, Drug, and Cosmetic Act, but on oral argument their counsel indicated that he had not too much confidence in the soundness of this argument. We think the contention is without merit. The common definition of a package is any container in which goods are packed, such as a box, case, barrel or crate. See Webster's

New International Dictionary, 2nd Edition. We find no implication in the Act that the Congress intended to use the word with any connotation other than its commonly accepted meaning. The numerous administrative interpretations of the statute to the same effect are entitled to great weight, inasmuch as they have persisted for years without congressional interference. Norwegian Nitrogen Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796; White v. Winchester Country Club, 315 U.S. 32, 41, 62 S.Ct. 425, 86 L.Ed. 619; Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124. So, too, in Strong, Cobb & Co. v. United States, 6 Cir., 103 F.2d 671, 674, the court held that a drum holding some 17,000 medicinal tablets was, within the statute, a package.

■ We think elimination of the labels and permitting the repacked unlabeled barrels to go out containing horse meat were entirely sufficient to sustain the verdict and judgment. However, we are also of the opinion that, under the evidence submitted by the government, placing the words "chucks" and "chunks" on the repacked barrels was entirely misleading. The government's evidence is that, unless otherwise limited, the ordinary significance of these words is that they are beef products. After the packing company received actual custody of the barrels, no subsequent consumer purchaser would have any warning that the barrels contained horse meat but would know only that they contained "chucks" and "chunks," which commonly mean beef.

■ There is some controversy as to whether defendants removed all the inspection stamps indicating that the contents were horse meat. The defendants insist that they did not remove all such stamps before repacking, but the evidence of the government is to the effect that defendants were seen removing the stamps from every piece of meat upon which they appeared. Bearing in mind that we must accept the evidence in its phases most favorable to the government, we can not say that the jury was not justified in believing that all such informative stamps were being removed. United States v. Monarch

Distributing Co., 7 Cir., 116 F.2d 11, 13, certiorari denied 312 U.S. 695, 61 S.Ct. 732, 85 L.Ed. 1130.

Defendants seem to insist that they acted in good faith and did not deceive their purchaser. Such a contention, of course, is beside the point, for the purpose of the statute is to prohibit commerce in misbranded articles. The good intent of the one who misbrands is of no avail. Every person responsible for the commission of the prohibited acts is guilty of the offense defined, irrespective of his intent. United States v. Dotterweich, 320 U.S. 277, 64 S. Ct. 134, 88 L.Ed. 48; United States v. Parfait Powder Puff Co., 7 Cir., 163 F.2d 1008, certiorari denied 332 U.S. 851, 68 S.Ct. 356, 92 L.Ed. 421; United States v. Greenbaum, 3 Cir., 138 F.2d 437.

Inasmuch as the sentence of the court was within the limits prescribed by the law, in the absence of procedural error, the judgment must be and is affirmed.