Randon **PORTER, Jr., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 13274.**

United States District Court
S. D. Texas,
Houston Division.
Aug. 4, 1961.

Liddell, Austin, Dawson & Sapp, Dwight H. Austin, Houston, Tex., for plaintiff.

Louis F. Oberdorfer, Asst. Atty. Gen., Lyle N. Turner, William N. Ravkind, Attorneys, Department of Justice, Washington, D. C., Harold A. Chamberlain, Arlington, Va., and Woodrow Seals, U. S. Atty., and William L. Bowers, Jr., Asst. U. S. Atty., Houston, Tex., for defendant.

INGRAHAM, District Judge.

Plaintiff taxpayer, Randon Porter, Jr., seeks refund of federal excise taxes paid defendant Government from February 14, 1958, to June 30, 1958. These taxes were levied on fees paid the Houston Yacht Club (hereafter "club") for rent of a boat slip. Sections 4241 and 4242 of Internal Revenue Code of 1954 (26 U.S.C.A. §§ 4241, 4242) under which taxes were imposed provide:

"§ 4241. Imposition of tax

"(a) Rate.—There is hereby imposed—

"(1) Dues or membership fees.— A tax equivalent to 20 percent of any amount paid as dues or membership fees to any social, athletic, or sporting club or organization, if the dues or fees of an active resident annual member are in excess of $10 per year * * *

"Sec. 4242. Definitions

"(a) Dues.—As used in this part the term 'dues' includes any assessment, irrespective of the purpose for which made, and any charges for social privileges or facilities, or for golf, tennis, polo, swimming, or other athletic or sporting privileges or

facilities, for any period of more than six days * * *."

■ The undisputed facts follow. Plaintiff was a regular dues-paying member of the club. Houston Yacht Club is a social or sporting club within the meaning of Section 4241. Club facilities include club house, swimming pool, dining room, sleeping rooms and a harbor with adjacent wharves and boat slips. These boat slips are of various sizes, and some are open and others covered (Stip. par. 3). All club members could use its available facilities, but any member who rented a slip for mooring his boat was charged for such over and above regular monthly dues (Stip. par. 5). Rates vary for slips because of differences in size, covering and location (Stip. par. 3). Under rental arrangements between club and members the charge made for use of slips was on a day to day basis at a rate of so much per day; members were billed at the end of each month for the number of days slip was used (Stip. par. 4; plaintiff's brief of July 24, pages 2–3).

■ Plaintiff rented such a slip from club on February 14, 1958. Rental price therefor was $1.22 per day. Except for occasional outings, none overnight, plaintiff's boat was moored continuously at his slip from February 14, 1958, to June 30, 1958, a period of 136 days. During this period plaintiff was charged and paid rentals of $129.32, i. e., $1.22 per 106 consecutive days (30 days charged on June 30, 1958, not being in quarters here litigated) (Stip. par. 4).[1]

On August 7, 1959, excise taxes were assessed on above slip fees in the amount of $25.86 per Section 4241. Plaintiff paid under protest $27.60 (amount assessed plus interest). There has been compliance with procedural prerequisites for refund actions. These issues are to be decided: (1) whether the $129.32 paid by plaintiff to club as boat slip rental was taxable as "dues" under Section 4241, as defined in Section 4242, of Internal Revenue Code of 1954; and (2) if such constitute "dues", whether such payments were made for "any period of more than six days" within meaning of Section 4242.

Clearly, these payments were "dues" under Sections 4241 and 4242. Slip rentals constitute charges for sporting privileges or facilities within the language of Section 4242. Plaintiff paid $129.32 for use of club's facility. It is stipulated that Houston Yacht Club is a social or sporting club within Sections 4241 and 4242.

Case authority so holds. In White v. Winchester Club, 1942, 315 U.S. 32, 62 S.Ct. 425, 86 L.Ed. 619, these standards for determining what are "dues" are enunciated at 315 U.S. 41, 62 S.Ct. 430:

"* * * Payment of the price of an individual dinner at the club dining room or of a single round of golf lacks the element of making common cause inherent in the idea of club activity. But, on the other hand, payment for the right to repeated and general use of a common club facility for an appreciable period of time has that element and amounts to a 'due or membership fee' if the payment is not fixed by each occasion of actual use."

Unlike a single dinner, a night's lodging or round of golf, plaintiff availed himself of club's slip 106 consecutive days. Boat slips were a "common club facility", for all members could use them by paying rental fees. Plaintiff made "repeated and general use" of slip.

All doubt is erased by Knoll Golf Club v. United States, D.C.D.N.J.1959, 179 F. Supp. 377. Every member of golf club was entitled to use its dining room, golf course, bar, etc.; if a member so desired he could pay an additional fee for use of an individual locker. Locker fees were

1. On February 28, 1958, taxpayer was billed for 14 days in February and charged in advance for 31 days in March. On April 30, 1958, taxpayer was billed for 30 days in April, while he was billed for 31 days in May on May 31, 1958 (Exs. B, D and E).

held taxable as "dues or membership fees" within Sections 4241 and 4242. The analogy between locker fees in Knoll Golf Club and slip rentals here is obvious; both are within ambit of Sections 4241 and 4242.

The remaining issue was not present in above cases (Winchester Club involved *annual* golf fee and Knoll Golf Club had *annual* locker fee). Under Section 4242 dues are "any charges for * * * sporting privileges or facilities, for any period of more than six days * * *". Plaintiff points out a slip charge was made daily for the use of the slip for each separate day. Club's arrangement, says taxpayer, gave him no right to use the slip beyond one day, nor was he obligated to pay rental any succeeding day. Plaintiff claims charges were daily, and billings were monthly. Hence, slip charges did not confer right to use slip "for any period of more than six days" within Section 4242.

If accepted, plaintiff's theory could lead to emasculation of Section 4241. How easy for the club to declare its membership dues are X dollars daily thereby exempting annual or monthly club dues. If viewed apart from Section 4242's purpose and administrative history, plaintiff's artificial concept of what constitutes "any period of more than six days" has a certain verbal appeal. Plaintiff's interpretation falls however before statute's legislative and administrative context.

The definition of "dues" in Section 4242 was added by the Revenue Act of 1941 (Section 543(b)) which amended Section 1712(a) of Internal Revenue Code of 1939, 26 U.S.C.A. § 1712(a). This legislative history is detailed in White v. Winchester Club, supra. A general characterization of these statutes and their spirit is in 179 F.Supp. 379:

> "Clearly, the Congressional purpose in enacting these provisions was to impose a luxury tax. * * *

> "Both the above legislative history and the judicial gloss placed upon these statutes indicate that the amendments made by the Congress therein (e. g. Section 543(b) of Revenue Act of 1941, c. 412, 55 Stat. 711) were enacted both to clarify and broaden its previous provisions."

Reenactment of Section 1712(a) of Internal Revenue Code of 1939 as Section 4242 of Internal Revenue Code of 1954 adopted previous administrative interpretation. Helvering v. Wilshire Oil Co., 1939, 308 U.S. 90, 60 S.Ct. 18, 84 L.Ed. 101; Helvering v. Reynolds, 1941, 313 U.S. 428, 61 S.Ct. 971, 85 L.Ed. 1438. Relevant administrative interpretation of statutory definition of "dues" rejects plaintiff's theory of Section 4242. Treasury Regulations 43, secs. 101.22–101.28, interpreted Sections 1710 and 1712 of Internal Revenue Code of 1939, 26 U.S. C.A. §§ 1710, 1712. A Treasury ruling on Section 101.24 of Treasury Regulations 43 defined "any period of more than six days".

I turn then to Rev.Rul. 253, 1953–2 C.B. 342, on the question of consecutive daily fees paid by member of such a club. The club there involved had three classes of members, designated A, B and C; all classes were required to pay same yearly dues. Classes A and B had to pay for sublease of certain club land, but Class C members had only to pay *daily* ground fees for use of club facilities. Treasury ruled at page 343:

> "Where daily ground fees are paid for a period of more than 6 consecutive days by class C members, such fees constitute dues within the meaning of section 1712(b) (sic) (predecessor of Section 4241) of the Code and are subject to tax." [2]

This ruling is relevant here, for taxpayer paid *daily* boat slip rental fees for a period of 106 consecutive days. Under Rev. Rul. 253 payments of such daily fees for

---

2. Treasury Regulations 43, Sections 101.-22–101.28, were made applicable to Sections 4241 and 4242 by Treasury Decision 6091, 1954-2 C.B. 47; hence, Rev.

Rul. 253 was made applicable to Section 4242, pursuant to Section 7805 of Internal Revenue Code of 1954, 26 U.S.C.A. § 7805.

more than 6 consecutive days constitute "dues" within Section 4242.

While I agree with plaintiff's contention that Section 4242 contemplates more than 6 consecutive days, not just seven or more days in any given tax period, the court still believes these rental charges fall within Sections 4241 and 4242. The price claimed by club on February 28, 1958, covered 14 consecutive days in February and, significantly, 31 days rent *in advance* for March 1958. Again, the toll for April 1958 was 30 days of consecutive occupancy. Likewise, the bill of May 31, 1958, recorded 30 days of consecutive use of boat slip.

Taxpayer's payments to the Houston Yacht Club for rent of a boat slip are taxable as "dues" under Section 4241. Plaintiff is not entitled to refund. The clerk will notify counsel to draft and submit judgment accordingly.