**HAWAII YACHT CLUB, a Hawaii
corporation, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. No. 2498.**

United States District Court
D. Hawaii.

Feb. 25, 1969.

---

Robert Dodge, Heen, Kai & Dodge, Honolulu, Hawaii, for plaintiff.

Yoshimi Hayashi, U. S. Atty., Honolulu, Hawaii, for defendant.

## DECISION

PENCE, District Judge.

On February 14, 1964, the District Director of Internal Revenue made a deficiency assessment against Plaintiff in the amount of $974.27 ($884.52 as tax and $89.75 as interest), for failure to pay taxes on the amounts paid by club members as rent for certain mooring slips for the time from January 1, 1961 through June 30, 1963. The assessed amount was paid in full on February 26, 1964. On June 4, 1964, Plaintiff filed claims for refund for the period and amounts as follows: for 1961, $449.68; for 1962, $357.58; for the first two quarters of 1963, $167.01. On February 4, 1965, the District Director disallowed the claims for refund. This suit followed.

Jurisdiction is had under 28 U.S.C. § 1340 and § 1346. Plaintiff has complied with statutory requirements of 26 U.S.C. § 6532(a) and § 7422(a). A consent has been filed, pursuant to 26 U.S.C. § 6415(a) giving Plaintiff standing to sue.

Plaintiff, a private yacht club, is a non-profit corporation organized in 1953, existing under the laws of the State of Hawaii. All properties and operations are located in Honolulu, Hawaii.

Plaintiff shares no facilities with the general public. Except for the shoreline, the club is surrounded by a wire fence and is accessible only through a single gate. Guards are on duty at the gate daily to exclude from the club premises persons who are not members or who have not been extended the privilege of using the club facilities.

Plaintiff leases from the State of Hawaii the land of which its facilities are located, as well as five catwalks off the mole alongside, that provide space for ten boat mooring slips. The lease (denominated "License") was entered into between the Hawaii Yacht Club (acting through its officials on behalf of the whole membership) and Hawaii in 1957. It provides, in relevant part, that the Licensee (the Club) is

> "To have and to hold all and singular the said Premises herein mentioned and described with appurtenances * * * for yacht club activities and no other purpose. * * *"

and that

> "The Licensee shall not assign this license and agreement nor sublet the licensed premises or any part thereof, nor permit the use of said premises by anyone other than the Licensee, its members and guests and the agents and servants of the Licensee, except upon written consent of the Licensor first obtained." (#8)

The club was obligated to pay Hawaii $209.23 per month and in addition thereto "the charges for the aforementioned catwalks shall be at the regular tariff rates in effect at the time." During the period in question, January 1, 1961 through June 30, 1963, the State charged the Plaintiff club $150 per month ($15 per mooring slip) for the use of the five catwalks. The Club was also required to make (and maintain) a cash deposit, in advance, "equal to one month's rental and mooring charges"

The Plaintiff Club assigned the ten mooring slips, provided by the five cat-

walks that the Club leased from the State, to its members. Assignments for mooring slips were made by the Club's Port Captain from a priority waiting list, pursuant to the Club Constitution and By-Laws. The Club By-Laws provide, in part, that

> Space permitting, two yachts may occupy one mooring slip. The second occupant must receive permission from the Port Captain and from the regular assigned occupant prior to moving into an occupied berth. Mooring fees may be shared however the regular assigned occupant will be responsible for all moooring fees. (Sec. 2, p. 24)

> All yachts occupying Club slips will be maintained in a seaworthy condition. Living aboard will be governed by existing Harbor Board Regulations. (Sec. 3)

> An occupant of a Club slip must pay the required mooring fees. These mooring fees are due and payable on the first of each month. Fees may be paid in advance. (Sec. 6)

Once a slip was assigned to a member, that assignment continued so long as the member was not in default and so long as the member did not vacate the space for more than ninety days.

The charge made by the Club to each member assigned a slip was imposed and billed on a monthly basis, at the rate of $15 per month, during the periods January 1, 1961 through June 30, 1963.

Article II, Section 2, of the By-Laws provide that

> Initiation Fees and Dues may be increased, and assessments levied, by a majority vote of the Regular members at any Regular or Special meeting, provided that notice of such contemplated action has been sent to all members * * *

During the period in question, there was a membership of about 300 in the Yacht Club, composed of six classes of members: Honorary, Life, Regular, Associate, Junior, and Guest. In January, 1961, members owned approximately 51 sailing yachts and an unknown number of power boats. In January, 1962, members owned approximately 60 sailing yachts and 25 power boats. In January, 1963, members owned approximately 69 sailing yachts and 22 power boats.

The Hawaii Yacht Club was then and is now a social, athletic, or sporting club or organization within the meaning of Section 4241 of the Internal Revenue Code of 1954. In 1954, the Club received a determination of income tax exemption from the Internal Revenue Service under Section 501(c) as a club organized and operated exclusively for pleasure.

The objectives of the Club as stated in Article II, Section 1 of its Constitution were:

a. To promote yacht racing, cruising, motorboating, fishing, and various other marine activities and general interest therein.

b. To promote facilities for the comfort, convenience, and enjoyment of members and their guests.

c. To afford members the opportunity to learn elementary navigation, astronomy, seamanship, rules of the road, safety regulations, communications, and all other subject matters pertaining to ships, harbors and marine affairs.

The Club sponsors numerous sailing and power boat races and meets during each year and its members participate in similar events sponsored by other yacht clubs. Social activities are sponsored by the Club throughout the year. By virtue of mooring space reservations made by Hawaii in the lease, the Club becomes the headquarters for the Trans-Pacific Yacht Race. The athletic or sporting features as well as the social activities are substantial or essential parts of the life of the organization.

The question which this court must decide is whether the amounts collected by the Plaintiff from its members for the use of mooring spaces constitute "dues" within the meaning of 26 U.S.C., Sec. 4242(a), so that Plaintiff is liable

for the tax imposed by 26 U.S.C., Sec. 4241(a).

Internal Revenue Code Section 4241, repealed in 1965, but applicable insofar as the case at bar is concerned, reads as follows:

(a) *Rate.*—There is hereby imposed

.1) *Dues or membership fees.*—A tax equivalent to 20% of any amount paid as dues or membership fees to any social, athletic, or sporting club or organization, if dues or fees of an active resident annual member are in excess of $10 per year.

Section 4242(a) defined dues in the following manner:

As used in this part the term "dues" includes any assessment, irrespective of the purpose for which made, and any charges for social privileges or facilities, or for golf, tennis, polo, swimming, or other athletic or sporting privileges or facilities, for any period of more than six days  *  *  *.

One of the illustrations clarifying this section appears in 26 C.F.R., Sec. 49.-4242–1:

*Example (5).* A club organized and operated for promotion of yachting, and other aquatic sports, and qualifying as a social, athletic or sporting club owns and maintains docking and mooring facilities for the use of its members. The club makes a charge to each member using the facilities  *  *  * The docking and mooring facilities are considered to be social, athletic or sporting privileges or facilities, since they are so closely associated with the yachting and other aquatic activities for which the club was created as to partake of the nature of those activities. Charges made by the club for these facilities constitute dues or membership fees if the period for which the charge is made is more than 6 days.

Plaintiff argues that the mooring fees in question are not dues under Sec. 4242 because rates are not set by the Club, but by the State and that the Club merely serves as a conduit through which club members pay the State. Secondly, Plaintiff argues that the slips are not "common club facilities available for the repeated and general use of the members", since a) they may be used only by the particular member or members renting them at the time, and b) there are so few of them that they constitute a special service to select individuals rather than a "club facility".

▉ Plaintiff's first argument is without merit. Hawaii Yacht Club was not acting as a mere conduit for payment by the individual to the State. The lease entered into between the Club and Hawaii, which prohibited sub-leasing or assignment by the Club, contained none of the limitations to use of the slips found in the Club By-Laws. The agreement by which Club members paid for slip rentals established a set of standards and obligations on the part of the members which were unique to the member-Club relationship. The fact that the Club assessed rates for slip rentals equal to the State tariff does not mean that it was bound to do so. No provision in the Club Constitution or By-Laws required the Club to charge members the same rate as charged by the State. Indeed, the Club would have been free to allow members to use the slips for free, if they so desired.

Plaintiff's second argument must also be rejected. The 1941 case of White v. Winchester Country Club, 315 U.S. 32, at 41, 62 S.Ct. 425, at 430, 86 L.Ed. 619, construing former Revenue Act Section 501, analyzed the situation of golf dues owed a club in the following manner:

Consideration of the nature of the club activity is a necessary preliminary to the formulation of a test of what constitutes a "due or membership fee." So far as finances go, the fundamental notion of club activity is that operating expenses are shared without insistence upon equivalence between the proportion of an individual's contributions and the proportion of the benefits he receives. Thus, on the one hand, payment of the price of an individual dinner at the club dining room

or of a single round of golf lacks the element of making common cause inherent in the idea of club activity. But, on the other hand, payment for the right to repeated and general use of a common club facility for an appreciable period of time has that element and amounts to a "due or membership fee" if the payment is not fixed by each occasion of actual use.

The Federal District Court in Cohan v. United States, 198 F.Supp. 591 (E.D. Mich., S.D., 1961) after suggesting that the *White* case would be decided differently under then-existing statutory definitions, elaborated upon the implications of that decision:

> *White* does not say that the individual and exclusive use of a club facility exempts one from the tax. Only one golfer can occupy and use a tee or a green at one time. Only one club member can use one locker at one time and even in the case of a club facility used in common, for example a swimming pool, a user exclusively occupies that portion of the pool in which he is.
>
> All club facilities in the final analysis are used by individuals. *It is in the ultimate fact that club members act in concert in the acquisition, ownership and management of club facilities and privileges and provide these facilities and privileges for use either to individual members* as in the case of lockers or sailboats or boatwells *or for use by groups of club members* as in the case of a club's golf course or swimming pool that the rationale is found. The right to use a club facility or privilege sets the standard—the actual use for more than 6 days makes the charge therefor taxable. (*Cohan,* supra; at p. 600.) (Emphasis added.)

That court goes on to indicate that it was congressional intent to impose a tax upon use of boating facilities belonging to the club for the "luxury of membership in a social, athletic or sporting club and to the charges for the use of such club's facilities or privileges." (p. 601)

The Court of Appeals for the 9th Circuit held, in a case quite similar to the one at bar, that slip rentals were "dues" within the statutory definition and therefore taxable. In that case, a club of 1800 members provided mooring slips for approximately 100 boats (Hawaii Yacht Club has 300 members and 10 mooring slips) upon a monthly rental basis. The court cited *White* and *Cohan* in support of sustaining the tax. United States v. Howe, 349 F.2d 483 (9th Circuit, 1965).

The case of Porter v. United States, 303 F.2d 67 (5th Circuit, 1962), cited by Plaintiff in his brief, would not support his position in this case. Slip rental in *Porter* was fixed by each occasion of actual use, the situation specifically proscribed in *White,* while here, rental is on a monthly basis, with rights of retention, as in *Howe.*

When Plaintiff first applied to the Territory of Hawaii for rental space for boats of club members, the request was for an entire mole. When that was rejected, a request for space for 40 boats was made. The Club was ultimately granted only 5 catwalks for its use. Because of that small number, Plaintiff now attempts to argue that the slips are not "common club facilities for general use" by club members, but are a "special service" to select individual members. As was pointed out in the *Cohan* case, supra, it is not the number of facilities made available for use by Club members which determines whether they are special services, but the nature of the facilities or privileges and their relationship to the functioning and purposes of the organization.

The payments here in question were "dues" within the purview of 26 U.S.C, Sec. 4242(a) and were subject to the tax assessed. Accordingly, let judgment for the Defendant be entered.