## Ox Ridge Hunt Club, Inc. *v.* Tax Commissioner of the State of Connecticut

House, C. J., Loiselle, Bogdanski, Longo and Speziale, Js.

Argued January 5—decision released May 2, 1978

*William B. Rush,* with whom was *Collin P. Baron,* for the appellant (plaintiff).

*Richard K. Greenberg,* assistant attorney general, with whom, on the brief, were *Carl R. Ajello,* attorney general, and *Ralph G. Murphy,* assistant attorney general, for the appellee (defendant).

Speziale, J. The sole issue presented on this appeal is whether certain charges imposed upon

members of a riding club for the boarding of horses are taxable as "dues" under General Statutes § 12-543.[1]

In 1974, the defendant tax commissioner assessed additional taxes against the plaintiff on the basis that horseboard charges imposed upon club members who boarded their horses in stables maintained by the club were subject to taxation as dues under General Statutes § 12-543. The plaintiff brought an appeal of that assessment to the Court of Common Pleas. The appeal was dismissed, and it is from the judgment rendered in favor of the tax commissioner that the plaintiff has appealed to this court.

The stipulation of facts under which the issue was submitted to the Court of Common Pleas was adopted by that court in its finding of facts. The court found that the plaintiff is a nonstock corporation in Darien, existing under the laws of the state of Connecticut, and formed for the purpose of fostering friendship, communication and social contact for its members. The club maintains various facili-

---

[1] "[General Statutes] Sec. 12-543. DUES OR INITIATION FEES TAX. NATURE OF TAX. EXEMPTIONS. (a) There is hereby imposed a tax equivalent to ten per cent of any amount paid as dues or initiation fees to any social, athletic or sporting club or organization. Such tax shall be imposed upon the club or organization receiving such amounts. Reimbursement for such tax shall be collected by the club or organization from the member. Such reimbursement, termed "tax," shall be paid by the member to the club or organization charging the dues or initiation fees. Such tax when added to the amounts charged shall be a debt from the member to the club or organization charging such amounts and shall be recoverable at law.

(b) (1) A club or organization shall be exempt from the dues tax if its dues, either annual or life, or full initiation fees are each fifty dollars or less. (2) A club or organization sponsored and controlled by a charitable or religious organization, a governmental agency or a nonprofit educational institution shall be exempt from the dues tax. (3) Any society, order or association operating under the lodge system or any local fraternal organization among students of a college or university shall be exempt from the dues tax."

ties, including a clubhouse with eating facilities, stables, and indoor and outdoor riding facilities, with access to nearby riding trails. It also supports and manages horse shows, competitions, and horse care exhibitions, and attempts to provide members with information and expertise in matters related to their mutual interest in riding. Active members of the club pay an initiation fee and, thereafter, annual dues in a specified amount. Members may board their horses in the stables maintained on the club grounds, but there is no requirement that they do so. Approximately 45 of the 112 members board horses in these stables for some portion of the year.

The charge for horseboard is billed monthly and is prorated by dividing the monthly rate by thirty if a horse is boarded for less than a full month. Nonmembers who board horses are charged $5.00 per day if the horse is boarded for five or fewer days; if they use the club stables for more than five days, the charge is computed at the same prorated monthly rate which applies to members. The horseboard charges, which are shown separately in the member's monthly billing, are intended to cover wages paid to the grooms and supervisory personnel, and the cost of feed, bedding and other supplies used in boarding the horses; they are not intended to cover the cost of maintaining the barns, which costs are defrayed by general membership dues.

On the basis of these facts, the court concluded that the horseboard charges were "dues" as defined in General Statutes § 12-540 (5) and were therefore taxable under § 12-543. We do not agree.

"Dues" were defined in General Statutes § 12-528 (effective July 1, 1969, through June 30, 1971) to include "any assessment, irrespective of the purpose

for which made, and any charges for social privileges or facilities, or for golf, tennis, polo, swimming or other athletic or sporting privileges or facilities, for any period of more than six days." The present definition of "dues" in § 12-540 (5) is virtually the same as its predecessor, including amounts charged to members "irrespective of the purpose for which made and any charges for social, athletic or sporting privileges or facilities for any period of more than six days."

The dues tax and the definitional provisions in the General Statutes are derived from and modeled on the former federal excise tax on club dues (§§ 4241 and 4242 of the Internal Revenue Code and prior federal enactments, all of which have since been repealed), and the definition of dues in the Connecticut statute is almost identical to that in the federal statute. Under such circumstances, the construction placed on the federal statute by federal courts provides us with persuasive guidelines for construing the state statute before us. See *United Aircraft Corporation* v. *International Assn. of Machinists,* 161 Conn. 79, 85, 285 A.2d 330 (1971).

The focal point of the inquiry in all the relevant federal cases was whether the particular payments made by club members under a specified set of circumstances constituted "dues" under the statute. See, generally, annot., 100 A.L.R.2d 739. In *White* v. *Winchester Club,* 315 U.S. 32, 41, 62 S. Ct. 425, 86 L. Ed. 619 (1942), the United States Supreme Court articulated a test to be applied in determining whether payments by club members should be regarded as dues: "Consideration of the nature of club activity is a necessary preliminary to the formulation of a test of what constitutes a 'due or membership fee.' So far as finances go, the funda-

mental notion of club activity is that operating expenses are shared without insistence upon equivalence between the proportion of an individual's contributions and the proportion of the benefits he receives. Thus, on the one hand, payment of the price of an individual dinner at the club dining room or of a single round of golf lacks the element of making common cause inherent in the idea of club activity. But, on the other hand, payment for the right to repeated and general use of a common club facility for an appreciable period of time has that element and amounts to a 'due or membership fee' *if the payment is not fixed by each occasion of actual use."* (Emphasis added.) In *Merion Cricket Club* v. *United States,* 315 U.S. 42, 62 S. Ct. 430, 86 L. Ed. 656 (1942), decided the same day, the court applied this test to payments for golf privileges. The determination that the payments were taxable was based on the fact that members who paid the annual fees were entitled to use the golf facilities as often as they wished, but if they stopped using the facilities there was no proportionate refund of fees. Therefore, the court held (p. 43) the amounts paid constituted dues "since they were for rights to the repeated and general use of a common club facility for an appreciable period of time, and were not fixed by each occasion of actual use."

All subsequent federal cases which found payments taxable as dues involved situations where payments were for the right to use a facility for an appreciable period of time and were not fixed by the incidence of actual use. E.g., *Gearhart* v. *United States,* 269 F. Sup. 309 (E.D. Va. 1967) (monthly charge for boarding horses) ; *Boots & Saddles, Inc.* v. *United States,* 269 F. Sup. 274 (E.D. Mich. 1967)

(monthly charge for horseboard); *Cohan* v. *United States,* 198 F. Sup. 591 (E.D. Mich. 1961) (yearly payments for seasonal use of a reserved locker or boatwell; payment for "skipper's card" entitling member to use club-owned sailboats). On the other hand, where payments were fixed by each occasion of actual use, they were found to fall within the exception of *White* v. *Winchester Club,* supra. Thus, in *Porter* v. *United States,* 303 F.2d 67, 68–69 (5th Cir. 1962), a charge for the use of boat slips, billed monthly to members at a daily rate based on the number of days the slip was actually used, was held not to constitute dues. See also *Gould* v. *United States,* 187 F. Sup. 337 (D. Colo. 1960), aff'd, 296 F.2d 740 (10th Cir. 1961).

In the case before us, it is clear that although members who avail themselves of the stable facilities are charged on a monthly basis, the charge is based on the incidence of actual use. If a horse is boarded for less than a full month, the charge is prorated by dividing the monthly rate by thirty. The fact that this is technically not a daily rate because not all months have exactly thirty days is not determinative. Even though this bookkeeping procedure will cause the effective daily rate to fluctuate slightly from month to month, the obvious intent is to charge only for actual use of the stable facilities on a day-to-day basis. Therefore, these payments for horseboard by members of the Ox Ridge Hunt Club do not constitute "dues" as defined by General Statutes § 12-540 (5) and are consequently not taxable under § 12-543.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff.

In this opinion HOUSE, C. J., LOISELLE and LONGO, Js., concurred.

BOGDANSKI, J. (dissenting.) Section 12-540 (5) of the General Statutes provides that "dues" shall include "any charges for social, athletic or sporting privileges or facilities for *any* period of more than six days." (Emphasis added.) The use charge for any sporting facility for any period over six days, therefore, is taxable regardless of how the club bills its members. It is undisputed that the members of Ox Ridge are charged for periods of more than six days for horseboard and that the charge is for a sporting facility.

Section 12-540 is almost a duplicate of § 4242 (a)[1] of the Internal Revenue Code of 1954, defining an excise tax on club dues. The effect of § 4242 (a) and its provision of "for any period of more than six days" was to broaden the test of "incidence of actual use" established by the United States Supreme Court in 1942 in *White* v. *Winchester Club*, 315 U.S. 32, 62 S. Ct. 425, 86 L. Ed. 619, where the court (p. 41) in the absence of any statutory definition, formulated its own definition.[2]

Whether the boarding fee fits the court's definition of "dues" in the *Winchester Club* case need not concern us, for it fits squarely within the statutory definition with which we are here concerned. *John-*

[1] "[T]he term 'dues' includes any assessment, irrespective of the purpose for which made, and any charges for social privileges or facilities, or for golf, tennis, polo, swimming, or other athletic or sporting privileges or facilities, for *any* period of more than six days . . . ." (Emphasis added.)

[2] "[P]ayment for the repeated and general use of a common club facility for an appreciable period of time . . . amounts to a 'dues or membership fee' if payment is not fixed by each occasion of actual use."

*ston* v. *United States,* 337 F.2d 708, 710 (1st Cir. 1964). "The right to use a club facility or privilege sets the standard—the actual use for more than 6 days makes the charge therefore taxable." *Cohan* v. *United States,* 198 F. Sup. 591, 600 (E.D. Mich. 1961); see also *Gearhart* v. *United States,* 269 F. Sup. 309 (E.D. Va. 1967).

I would, therefore, find no error.