## LAKE OF THE FOREST CLUB v. UNITED STATES (two cases).

### Nos. 2695, 2696.

Circuit Court of Appeals. Tenth Circuit.

Aug. 27, 1943.

Alfred B. Page, of Kansas City, Mo. (Perry W. Shrader, of Kansas City, Mo., Frank L. Bates, of Kansas City, Kan., and Gage, Hillix, Shrader, Hodges & Cowherd, of Kansas City, Mo., on the brief), for appellant.

S. Dee Hanson, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Samuel H. Levy, Sp. Assts. to Atty. Gen., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and WILLIAMS, Circuit Judges.

HUXMAN, Circuit Judge.

These actions were brought by the Lake of the Forest Club, a corporation, under power of attorney from its members, to recover for them club dues collected under the provisions of Section 413 of the Revenue Act of 1928, 45 Stat. 791, 26 U.S.C.A. Int. Rev.Acts, page 441. The club has appealed from an adverse decision. The dues for which recovery was sought were collected over a number of years, and were substantial in amount. The ground relied upon for reversal is that the trial court erred in finding and concluding that the purpose of the club was the maintenance of a club for social enjoyment.

Section 413 of the Act in question provides for the payment of a tax of ten per cent on any amount paid "as dues or membership fees to any social, athletic, or sporting club or organization * * *." The club has been operated from its inception under a charter which defines the purpose of the organization as "maintenance of a club for social enjoyment. To purchase, own, manage and control and dispose of such personal property as may be necessary for its use and benefit. To purchase, hold, own, manage, control and dispose of such real estate as may be necessary for its use and benefit. To erect the necessary buildings and improvements thereon in order to provide suitable accommodations for its members, for the transaction of its business and the carrying out of its purposes and objects * * *."

Appellant acquired 179 acres adjacent to a main highway on which is located a lake covering approximately thirty-five acres. The lake has been stocked with fish at all times. Around this lake are located 235 lots. The club also leased 640 acres to the north for the purpose of preventing soil erosion and for the protection of the lake. Since 1929, it has also leased 153 acres on the east side of its property, on which is located a nine hole, sand green golf course. During the early years, there were no accommodations for members on the club property. They ordinarily came out over the week end, and lived largely in tent houses. In more recent years, however, substantial houses have been built by the members, and a building approximately 120' x 70', known as the clubhouse, is now located on the premises. The members of the club hold approximately ten dances a year in the clubhouse. A privately owned grocery store is operated in the basement of the clubhouse. The proprietor of this store serves meals on Thursday nights to a limited number of the members. Members have about twenty privately owned row boats on the lake. Spring boards and rafts are provided, and swimming is permitted in the lake. During the summer months the ladies hold meetings in the clubhouse, which are generally addressed by someone from Kansas City, who ordinarily gives a book review. A comparatively small number of the total membership use the club regularly for fishing. Others fish occasionally. While there is dispute between the parties as to the extent to which the golf course is used, its use is substantial. On Saturdays, from twenty-five to thirty members play golf, and a lesser number play during the week.

All of the lots, save sixty-two which are still owned by the club, have been sold to members. One hundred ten substantial homes have been built by club members on their lots. The club property is located approximately fourteen miles from Kansas City, and many members commute to and from their places of business in the city. About sixty families now live permanently at the club. About thirty-five others spend only the summer months there, while the rest come out only for week ends. The club is in the Bonner Springs School District, and the children of those members who live permanently at the club attend the Bonner Springs school. One member of the club is on the Bonner Springs Board of Education.

The club has granted gas, electric, and telephone franchises to neighboring utilities, and these services are furnished on the club grounds to the club and to the individual members. Water and sewage systems also are maintained, and the club maintains roads throughout the club property.

The annual expenditures approximate $14,000. The parties are in disagreement as to what portion of this amount is properly allocable to social and entertainment functions of the club. Appellant contends that not more that 19.07% of the total expenditures are devoted to social and athletic activities, and that the finding of the court that 60% is devoted to such use is without support in the evidence. From the evidence in the record it is impossible to determine the exact percentage of such expenditures. It may be that the finding that sixty per cent of all expenditures are for social or

athletic functions is not sustained by the record. On the other hand, it is quite clear that the percentage of such expenditures exceeds the 19.07% contended for by appellant. It is not necessary to the validity of the judgment that the exact percentage be determined, as in any event it is clear that such expenditures are substantial in amount.

It must be conceded that in the early years of the club it was almost exclusively a social and athletic club. It is also fairly inferable that in the latter years more emphasis has been placed on home building and community development in order to make the club a desirable place in which to establish a permanent residence. But this does not mean that the club has abandoned its social functions or that they are not a material factor in the development and maintenance of the club.

The athletic and social functions of the club have already been adverted to in a general way. They are more than incidental to the operation of the club. They form a substantial part of its operation, and no doubt are a strong talking point and magnet for drawing members to the club. Appellant's contention that the sole purpose of the club is to develop a community center is not borne out by the evidence. It is to be further noted that the by-laws of the club contain provisions not ordinarily found in an undertaking devoted to the development of a tract as a community center.

The by-laws provide for active and associate members. They limit the members to two hundred. No member may own more than two lots. An application for membership must have the endorsement of an active member of the club, and it takes five votes of the membership committee and seven votes of the directors to elect a new member. No member may sell his lot to one other than an active member. Upon the death of a member, unless his heir or devisee is accepted as a member, title to his property reverts to the club, which sells the property to a member or person entitled to become a member, deducts all amounts due to the club for assessments and dues, and

pays the balance to the heirs or legatees of the deceased member.

 It is not necessary that the dominant or major portion of a club's activities be devoted to social or athletic functions to make it a social or athletic club within the meaning of the taxing statute. If the social or athletic features of the club are a material part of its purpose and activities and promote its existence and advancement, it is a social club within the meaning of the Act, and its members are subject to the payment of the tax.[1]

We have no difficulty in concluding from a perusal of the entire record that the social and athletic features of the club represent a substantial part of its activities and that it is a social club within the meaning of the Act.

Affirmed.

---

[1] Chance v. United States, 9 F.Supp. 1011, 80 Ct.Cl. 692; Chicago Engineers' Club v. United States, 9 F.Supp. 680, 80 Ct.Cl. 615; Union League Club of Chicago v. United States, 4 F.Supp. 929, 78 Ct. Cl. 351; Town Club of St. Louis v. United States, 8 Cir., 68 F.2d 620; Army and Navy Club of America v. United States, 53 F.2d 277, 72 Ct.Cl. 684; Transportation Club of San Francisco v. United States, 17 F.Supp. 201, 84 Ct.Cl. 253; Block Hall v. United States, 57 F.2d 918, 74 Ct.Cl. 600.