## MALIBU LAKESIDE MUT. WATER CO. v. UNITED STATES.

### No. 11625.

District Court of the United States, S. D. California, C. D.

Feb. 19, 1951.

William D. Behnke of Riley & Hall, Los Angeles, for plaintiff.

Ernest A. Tolin, U. S. Atty., E. H. Mitchell, Edward R. McHale, Assts. U. S. Atty., Eugene Harpole, and Frank W. Mahoney, Special Attorneys Bureau of Internal Revenue, all of Los Angeles, Cal., for defendant.

YANKWICH, District Judge.

### Findings of Fact.

#### I

Plaintiff is a mutual water company organized under and pursuant to the laws of the State of California, with its principal place of business located in the County of Los Angeles, State of California. During the taxable years involved herein, plaintiff was authorized to and did transact and is doing business in the County of Los Angeles, State of California.

#### II

During the period from October 12, 1945, to and including August 10, 1949, plaintiff collected from its members and paid to the Collector of Internal Revenue, 6th District of California, Los Angeles, California, a total of $3,358.94, as taxes on dues of its members under the provisions of sections 1710, 1715 and 1716 of the Internal Revenue Code, 26 U.S.C.A. §§ 1710, 1715, 1716. Schedules showing the amounts collected and the dates of payment to the Collector of Internal Revenue are attached to and incorporated in the complaint as exhibits "B", "C", "D", "E", "F–1" and "F–2".

#### III

On or about October 12, 1949, plaintiff as the agent, representative, or attorney in fact of its members, filed its claims for refund on the amounts paid for the respective years 1945, 1946, 1947, 1948 and 1949, and on or about April 20, 1950, plaintiff filed an amended claim for 1949 on the amount of taxes so paid in said year. The basis of the claims for refund was that plaintiff was not a social, athletic or sporting club organization within the meaning of the Internal Revenue Code. The said claims for refund were, by letter from the Commissioner of Internal Revenue, dated May 4, 1950, to the plaintiff, rejected and disallowed on the grounds that plaintiff was a social, athletic or sporting club or organization within the meaning of the Internal Revenue Code.

#### IV

The purposes of plaintiff are set forth in article second of its articles of incorporation, and are as follows:

"Second: That the purpose for which said corporation is formed is to acquire by all lawful means water and water rights and water bearing lands and to construct dams, reservoirs, ditches, to lay pipes and to construct all other needful aqueducts and water works for diverting, storing, conducting and distributing water, to dig or bore wells, construct pumps and operate the same and to furnish water to members of this corporation who are inhabitants throughout the tracts of land described, as follows:

"Northwest Quarter (¼) of Section Ten (10) and Northeast One-Half (½) of the Northeast Quarter (¼) of Section Nine (9) and Lots Five (5) and Six (6) in Section Three (3) Township One (1) South, Range Eighteen (18) West, S.B.B. & M. and that part of Lot Three (3) of Tract 2804, as per Map recorded in Book 33, Page 95 of Maps, in the Office of the County Recorder of Los Angeles County as follows:

"Beginning at a point in the westerly line of said Lot Three (3) distance south 8′ 38″ East, 2,065.5 feet from Las Virgines Station No. 8, as shown on said map; thence south 8′ 38″ East along the westerly line of said Lot Three (3) 71.5 feet to Las Virgines Station No. 9; thence North 84 27′ East along the southerly line of said Lot Three (3) 645 feet; thence South 43 30′ West, 2411.8 feet to the point beginning, excepting portion included within the lines of Cornell Road, which was described in Application No. 4040, Permit No. 1789, as Lot 33 of Section Four (4) Township One (1) South, Range Eighteen (18) West, S.B. B. & M. all in the County of Los Angeles, California, for domestic purposes, to purchase, lease or otherwise acquire, hold, own and enjoy to sell, lease, mortgage and other-

wise encumber and dispose of any and all other kinds of real and personal property, also to carry on all operations necessary or convenient in connection with the transaction of its business."

## V

Plaintiff's by-laws provided the usual provisions for a mutual water company with the usual officers and board of directors except that in article X, provisions were made for the civic center and recreational facilities as follows:

"Article X: Civic Center and Recreational Facilities.

"Section 1: Any member of the Company in good standing, and his immediate family or household, (i. e. those whom he supports), shall have access to and the use of all of the recreational facilities of the Company subject to the provisions of these By-Laws and such rules and reservations as the Board of Directors may deem advisable or necessary from time to time.

"Section 2: Ownership of property in Malibu Lakeside Tract does not in itself qualify anyone to use the facilities of the Company but that right rests solely in the members of the Company in good standing.

"Section 3: Guests of members (which includes renters) will be admitted to the privileges of the Civic Center when vouched for by a Guest Card dated and duly signed by a member in good standing, and the charge per Guest will be fixed by the Board of Directors from time to time. Guests must be of good moral character, of the Caucasian Race. Authority is hereby given to the Supervisor of Civic Center to refuse use of Civic Center to anyone whom he deems objectionable to the Membership."

## VI

Membership in the Malibu Lakeside Mutual Water Company was, and is, limited to the owners of lots within the area described in article second of its articles of incorporation. During the taxable years involved the dues or membership fees to a member owning an unimproved lot was $1.50 per month and to a member owning an im-proved lot $3.00 per month. Additional assessments were made by the plaintiff from time to time to meet additional charges or expenses of the company.

## VII

During the taxable periods involved, plaintiff owned a water well and a water system and furnished water to the members of the company who were inhabitants and owners of lots throughout the tracts of land described in article second of the articles of incorporation. Plaintiff also owned certain recreational facilities commonly known as the "civic center". This consisted of a club house containing one room 64 feet by 30 feet, used for dancing by the members to the music of a piano or record machine. At one end of the room there was a fireplace, together with chairs, settees, tables and smoking stands. In addition there were, at one end of the room, ladies' and men's dressing rooms, each 15 feet by 9¾ feet, and two storerooms, each 8 feet by 10 feet. At the other end of the building were caretaker's quarters, consisting of livingroom, bedroom and kitchen, partly furnished. There was a porch 64 feet by 12 feet on the north side of the club house overlooking the swimming pool. On the ground floor there were ladies' and men's dressing rooms, including showers and toilets for the use of the bathers. There was a swimming pool 70 feet by 30 feet and one tennis court. There were playgrounds for children with swings and a may pole. There were also four picnic tables on the playground. These facilities were available only to those members and their guests and were not at any time open to the public. All guests were required to have a guest card in order to use the facilities of the club house and grounds, including the use of the swimming pool, tennis court or picnic tables. During the taxable years involved, there was an entertainment committee, the chairman of which was annually appointed by the board of directors of plaintiff. This chairman, in turn, appointed members to serve on the committee and dances were held approximately once a month during the summer months, which

were entirely self-sustaining by the members except that occasionally a small deficit was paid by the water company. The water company would often advance small amounts of money to the entertainment committee for the dances, which was repaid out of the contributions of the members and guests who attended the dances. The club house had no bar and did not serve any meals or liquor of any kind. There were no attendants except that there was one employee of the water company known as the caretaker who devoted less than twenty-five per cent of his time in connection with the maintenance, repair and upkeep of the civic center, the remainder of his time being devoted to the water system. During the war years approximately from 1942 to 1947, the civic center was closed without objection by any of the members and no activities took place in connection with the civic center during this period of time. Plaintiff did not promote or actively encourage any social activities, sporting or athletic events except to sponsor said games as aforesaid. Plaintiff merely had possession of the recreational facilities and made them available to the members on a very informal basis. No revenues were derived from the recreational facilities except guest fees in the amount of fifty cents per person were collected from guests of members who used the recreational facilities.

## VIII

The income of plaintiff, derived almost entirely from its dues, was spent predominantly in connection with the water system and the business of furnishing water to its members and only a relatively small amount of money was devoted to the care, maintenance, repair, upkeep and improvements of the recreational facilities. The dues as paid by members of the water company represented reasonable charges for water service.

## IX

Plaintiff also used the club house for business purposes in connection with the annual meeting of its members.

## X

Plaintiff did not own any of the lots in connection with which it furnished water, except a few acquired as the result of delinquent water assessments. Plaintiff had no control over the sales of the lots within the water district and did not, in any way, solicit membership, advertise, or engage in any promotional activity for its membership.

## XI

The predominant purpose of the plaintiff was the business of furnishing water to its members, which it carried out during the taxable years involved and the civic center and recreational activities were purely incidental to its business purposes and were in no substantial degree material to plaintiff's existence or its prosperity.

## Conclusions of Law.

### I

This court has jurisdiction of the subject matter of this action pursuant to the provisions of Judicial Code, 28 United States Code, section 1346(a) (1), as amended.

### II

The Commissioner of Internal Revenue erroneously classified plaintiff as a social, athletic or sporting club or organization within the meaning of the Internal Revenue Code.

### III

That plaintiff is not a social, athletic or sporting club or organization within the meaning of the Internal Revenue Code.

### IV

The plaintiff is entitled to judgment in the sum of $3,358.94, together with interest on the following payments at the rate of six per cent per annum from the date of each respective payment as hereinafter set forth until a date preceding the issuance of the refund check by not more than thirty days with no costs taxable to either party. [Enumeration omitted.]