**Robert J. McINTYRE and Clare McIntyre**

v.

**UNITED STATES of America.**

**Civ. A. No. 9125.**

United States District Court
D. Maryland, Civil Division.

May 14, 1957.

Ralph R. Sachs, Washington, D. C., for plaintiffs.

Walter E. Black, Jr., U. S. Atty., James H. Langrall, Asst. U. S. Atty., Baltimore, Md., for defendant.

CHESNUT, District Judge.

This is a suit to recover an excise tax which the plaintiffs were required by the Commissioner of Internal Revenue, to pay under title 26 U.S.C.A. § 4241, which imposes a 20% tax on initiation fees and annual membership dues in excess of $10 paid by members of social, athletic or sporting clubs or organizations.[1] (The full text of the statute is set out in the footnote.) The plaintiffs, husband and wife, became original members of the Twinbrook Swimming Pool Corporation and made an initial payment thereto of $125 for so-called life membership. They also paid $25 to cover the 20% tax on their initial payment, which was paid by the corporation to the District Collector under protest. A petition for refund was duly filed and not having been acted on within six months, this suit has resulted. All procedural requirements for the suit have been duly met.

The principal question in the case is whether the Twinbrook Corporation is a social, athletic or sporting club or organization. The case has been submitted for decision on a written stipulation and a considerable amount of oral testimony, from which I find the following relevant and important facts:

1. The Twinbrook Corporation was duly formed in 1955 under the general incorporation laws of the State of Mary-

---

1. S.4241. "Imposition of tax

"(a) Rate.—There is hereby imposed.—

"(1) Dues or membership fees.—A tax equivalent to 20 percent of any amount paid as dues for membership fees to any social, athletic, or sporting club or organization, if the dues or fees of an active resident annual member are in excess of $10 per year.

"(2) Initiation fees.—A tax equivalent to 20 percent of any amount paid as initiation fees to such a club or organization, if such fees amount to more than $10, or if the dues or membership fees, not including initiation fees, of an active resident annual member are in excess of $10 per year.

"(3) Life memberships.—In the case of life memberships, a tax equivalent to the tax upon the amount paid by active resident annual members for dues or membership fees other than assessments, but no tax shall be paid upon the amount paid for life membership. In such a case, the tax shall be paid annually at the time for the payment of dues by active resident annual members.

"(b) By whom paid.—The taxes imposed by this section shall be paid by the person paying such dues or fees, or holding such life membership."

land. It conducts a swimming pool with appropriate bath house facilities situated in a generally residential area of the City of Rockville, which is the County Seat of Montgomery County, Maryland, the population of which is said now to be about 15,000. The size of the pool is 60 x 165 feet with a depth of 2½ to 5½ feet. It is situated on a tract of land of about 5 acres acquired by the Club after, on its application, the City Authority had re-zoned the particular land to allow its use for the particular purpose. The land was acquired and the pool facilities constructed at a cost of about $125,000.

2. The purpose of the Club as stated in its certificate of incorporation was "to provide a swimming pool or pools and other facilities to its members". It is a non-profit, non-stock corporation. Its organization, membership and government are provided for by its by-laws.

3. The principal provisions of the by-laws which are relevant here are:

Membership is limited to 600 persons or families owning residential property or business places within a designated portion of the City of Rockville. The holders of each original membership were required to pay an initial fee of $125 and an additional sum of $25 to be applied to the payment (under protest) of the 20% excise tax referred to. The privileges of membership involving principally the use of the swimming pool were accorded to the holders of the 600 initial memberships upon the payment of annual dues of $10; and the pool could be used by them and their dependent children and by certain occupants of their respective households, not including employees. The holders of these initial membership certificates were designated as "life members" in the by-laws. The certificates of membership were transferrable on certain conditions, not here important or relevant. Permission could be given by the corporate authorities on prescribed conditions for the use of the pool by children sponsored by various civic or philanthropic organizations, without charge, or at times for a very nominal charge to defray extra cost of maintenance.

4. The motivation for the formation of the corporation was due to the public spirited initiative of a few civic leaders who realized the importance of having additional recreation facilities for the Twinbrook area. At first an effort was made to have the public authorities of Rockville provide for the swimming pool at the taxpayers' expense; but when this proved to be impossible of accomplishment, these civic leaders determined to provide for the creation of a swimming pool at private cost of those members of the local community who would be willing to provide funds for the project. Very shortly the 600 memberships were acquired and the necessary funds raised for the acquisition of the land and construction of the pool, aided by a mortgage loan obtained from private banking sources. Much of the work in building the pool was performed either at cost or gratuitously by interested parties. In one sense the project was in substance a "community enterprise". This is well expressed in a summary by a quotation from the brief of counsel for the government as follows:

> "The plaintiffs have sought to go behind the certificate of incorporation and the by-laws. They have introduced evidence to show that the organizers of the pool project acted with the highest possible motives in organizing and carrying through their scheme to build a pool facility. They showed that the members of the corporation were interested in providing a wholesome summer meeting place for themselves and their children. They demonstrated the appeal of their project by showing that many people gave their labor free of charge to build the pool and that others contributed materials and land at cost. The use of the pool has been in keeping with the high motives of those who organized its construction. Many worthwhile or-

ganizations have been allowed to use the facility at a minimal charge. "The plaintiffs have proved and the Government has not disputed that by a concerted community effort the 600 members of the pool corporation have provided themselves with a pool facility which was not forthcoming from the local government of Rockville, Maryland, and have demonstrated a willingness to let worthwhile outside organizations share the fruits of their efforts."

5. The only activity of the corporation has been the operation of the pool. The evidence does not show that there have been any other entertainments of a social nature such as dinners or other meetings of the membership. The only social features are those which naturally occur in connection with the use of the pool. With respect to athletics, there have been no competitive or purely athletic features for the use of the pool other than the bathing and swimming therein.

Coming to the applicable law, I find that the statute (now title 26 § 4241) was originally enacted in substantially its present form as a tax excise measure in 1917. The government contends, and the plaintiffs deny, that on the principles established by the adjudicated cases the corporation should be classed as a social, athletic or sporting organization. I do not conclude that the government's contention is sound under the controlling facts.

■ There have been many judicial decisions applying the statutory provision to the varied facts of particular cases with naturally varying results. There seems to be no Supreme Court decision upon the subject but some principles are, I think, well established. (1) Particular cases are not to be decided merely upon the literally stated name or purpose of the Club; but rather from the nature and particular character of its actual activities; (2) a club or organization not originally properly classified as a social or athletic organiza-

tion may nevertheless by a change in its activities become properly so classified; (3) the mere fact that there is *some* kind or degree of social intercourse between the members is not of itself controlling because every organization of individuals which brings the members into personal contact from time to time must necessarily include to some extent social relationships; (4) if the predominant purpose and activities of the Club are primarily for the promotion of some common interest or objective and the social contacts of the members in connection with the furtherance of that object are only incidental, the organization should not be classified as a social club.

After reviewing many of the decided cases, I think the most clearly and concisely stated principle to be applied is to be found in the opinion of Judge Green, speaking for the Court of Claims in one of the earlier cases dealing with the application of this section. Army & Navy Club of America v. United States, 1931, 53 F.2d 277, 72 Ct.Cl. 684. It is this case which has been cited by counsel for the government in support of its position. The facts of that case are, however, quite different with regard to the social aspects of the Club when compared with those in the instant case. At page 282 of 53 F.2d the opinion in that case summarizes the matter by saying:

"* * * if the predominant purpose of the organization is not social, and its social activities are merely incidental to the furtherance of this different and predominant purpose, then the club is not a social one within the meaning of the law. But both of these matters must exist in order to create an exemption from the tax."

In that case the facts found by the court warranted the conclusion that the Army & Navy Club was a social organization within the meaning of the statute. Certiorari was applied for but denied by the Supreme Court. 1932, 285 U.S. 548, 52 S.Ct. 405, 76 L.Ed. 939.

In adopting and applying that principle to the facts here found, I conclude that the Twinbrook Corporation is not a social organization. Its predominant purpose is not social but the conduct of a swimming pool as a recreation center for the benefit of residents of a certain community area. Its qualifications for membership are based on local and not personal considerations. The personal contacts that necessarily occur from the use of the pool by its members and their children and other so-called "under privileged" children, to whom the facilities of the pool are accorded by permission of the officers and directors of the corporation, are only those incidentally arising from the use of the pool.

I think it unnecessary to review in any detail the facts appearing in the many judicial decisions which have been cited respectively by counsel for the parties. It will be found that in those cases where the club has been held to be a social organization, the basis of the conclusion is to be found in the degree and extent of the social features in proportion to the whole activities of the Club. It is not necessary that the purely social gatherings or entertainments constitute a majority or even a very large minority of the whole activities; provided the social aspects are in and of themselves, while possibly only a by-product, yet nevertheless are an important substantial feature of the Club promoting membership therein of those who may be more interested in the social acquaintances and contacts to be formed than in the major functional purposes of the Club. Thus a down town luncheon club in a large metropolis with luxurious dining rooms, reading rooms, with elaborate cuisine and lounging facilities and opportunity for recreational activities such as billiard and card tables, has been held to be a social club within the meaning of the statute. But in such a situation the social aspects of the club are, I think, more than merely incidental as in the present case. See Duquesne Club v. Bell, 3 Cir., 1942, 127 F.2d 363, 143 A.L.R. 1377; Turks Head Club v. Brod-

erick, 1 Cir., 1948, 166 F.2d 877. Some other cases where the club has under the facts been properly classified as social are—Lake of the Forest Club v. United States, 10 Cir., 1943, 137 F.2d 843; Town Club of St. Louis v. United States, 8 Cir., 1943, 68 F.2d 620.

On the other hand where the social aspects of the club are only minor and subordinate and principally incidental, the organization has been held not to be social in its nature within the meaning of the statute. Washington Club v. United States, 1930, 49 F.2d 656, 69 Ct. Cl. 621; Builders' Club of Chicago v. United States, 1932, 58 F.2d 503, 74 Ct. Cl. 595; California State Automobile Ass'n v. Smyth, D.C.N.D.Cal.1948, 77 F.Supp. 131, reversed on other grounds, 9 Cir., 175 F.2d 752, certiorari denied 338 U.S. 905, 70 S.Ct. 307, 94 L.Ed. 557; Squantum Ass'n v. Page, D.C.R.I.1934, 7 F.Supp. 815; Engineers' Club of Dayton v. United States, D.C.S.D.Ohio, 1955, 133 F.Supp. 72; Rockefeller Center Luncheon Club v. Johnson, D.C.S.D.N.Y. 1955, 131 F.Supp. 703; Furniture Club of America v. United States, D.C.N.D. Ill.1946, 67 F.Supp. 764; Malibu Lakeside Mut. Water Co. v. United States, D.C.S.D.Cal.1951, 97 F.Supp. 542.

I have examined the Treasury Regulations applicable to the statute. I do not find in them any provisions inconsistent with the principles heretofore stated; but on the whole the judicial decisions are generally consistent with them. Sec. 101.24 provides in substance that organizations having social, athletic or sporting features are presumed to be included under the statute unless and until it appears to the contrary. Sec. 101.25 with respect to social clubs provides in part:

"Any organization which maintains quarters or arranges periodical dinners or meetings, for the purpose of affording its members an opportunity of congregating for social intercourse, is a 'social * * * club or organization' within the meaning of the Code, unless its social features are not a material

purpose of the organization but are subordinate and merely incidental to the active furtherance of a different and predominant purpose, such as, for example, religion, the arts, or business. The tax does not attach to dues or fees of a religious organization, chamber of commerce, commercial club, trade organization, or the like, merely because it has incidental social features, but if the social features are a material purpose of the organization, it is a 'social * * * club or organization' within the meaning of the Code."

Counsel for the government has not pressed the point that the Twinbrook Corporation is an athletic club, if it is held not to be a social club within the statute; and I do not find any adequate basis for classing it as an athletic club. No case has been called to my attention by counsel that would support the contention that it is. While swimming is, of course, a kind of athletics in the general sense of that term, I do not think that the nature of this swimming pool is such that it makes the corporation an athletic or sporting organization within the statute. In its actual activities the use of the pool is largely for children, and the evidence is that there have not been any competitive swimming events. The athletic exercise involved in swimming is, of course, a merely muscular activity incidental to the exercise itself, which is primarily a matter of recreation similar to that of tennis, golf or other unorganized amateur sports. And in support of this view, counsel for the plaintiffs call attention to the Tax Regulation effective January 1, 1956, § 101.26—

"Athletic or Sporting Clubs—
"The possession and use of a gymnasium, swimming pool, or other athletic facilities by an organization having religious or philanthropic social service for its exclusive or predominant purpose do not bring the organization within the class of athletic or sporting clubs or organizations."

I think the same principle must apply in determining whether a club is an athletic organization within the statute that we have seen to apply in the case of whether it is a social club; that is to say, where the athletic features are only incidental to the main purpose and activities, the organization should not be classed as athletic within the meaning of the statute. For the converse on the facts, see Block Hall, Inc., v. United States, 1932, 57 F.2d 918, 74 Ct.Cl. 600.

The plaintiffs also contend that, even if the Twinbrook Corporation should be classed as a social organization, nevertheless the tax paid by the plaintiffs should be recovered by them because it was based on the amount paid by them for acquisition of a life membership in the corporation. On the contrary, counsel for the government contend that the sum of $125 paid by the plaintiffs on the organization of the corporation was an initiation fee and not a fee for life membership. The statute, 26 U.S.C.A. § 4241(a) (2), provides that the 20% tax is payable on initiation fees where the amount is in excess of $10; while § 4241(a) (3) provides—

"Life memberships.—In the case of life memberships, a tax equivalent to the tax upon the amount paid by active resident annual members for dues or membership fees other than assessments, but *no tax shall be paid upon the amount paid for life membership*. In such a case, the tax shall be paid annually at the time for the payment of dues by active resident annual members." (Italics supplied.)

It will be remembered that the amount of dues paid by active resident annual members does not exceed $10 a year, and therefore under the statute no tax is payable upon the amount paid for life membership. But if the payment of $125 made by the plaintiffs was an initiation fee and not a fee for life membership, then the tax was payable if the

corporation was a social or athletic organization. As I have decided that the Twinbrook Corporation was not a social, athletic or sporting organization, it is not necessary to decide this second question; but as it has been fully argued by counsel on both sides, I will state my opinion upon it.

The principal factors to be considered here are the incidents and characteristics of the membership certificate issued to the plaintiffs for which they paid the sum of $125. This appears from the by-laws. In the first place it is to be noted that the certificate is called a life membership although this is not of itself conclusive. While the certificate gives to the holders the privileges of membership in the corporation so long as they respectively live and hold the certificate as husband and wife, subject, however, to termination of membership upon transfer of the certificate to others on the conditions provided for in the by-laws (not seemingly important here), or until expulsion from membership under stated conditions, it is important to note that the certificate does not of itself entitle the holders or their children to the use of the swimming pool except upon the payment of annual dues of $10. Counsel for the government argues that the term "life membership" as used in the statute should be read in the light of common understanding of what constitutes life membership in a club; and contend that this common understanding is that a life member of a club is one who is exempted during his lifetime from the payment of annual dues. It is said to be a commutation of the amount of annual dues. In addition the argument is that on looking at the conditions leading to the formation of the Twinbrook Corporation and its objective of obtaining and operating a swimming pool, it is apparent that the cost of the undertaking was met only from the initial contributions in the way of payments of $125 for each of the 600 membership certificates; and that therefore in reality the money so paid by each holder of a certificate constituted in effect if not in name an initiation fee. In addition attention is called to the Treasury Regulation No. 101.28 relating to initiation fees. It provides in part that

"Under the Code the term 'initiation fees' includes any payment, contribution or loan required as a condition precedent to membership, whether or not any such payment, contribution, or loan is evidenced by a certificate of interest or indebtedness or share of stock, and irrespective of the person or organization to whom paid, contributed, or loaned." [2]

2. "Sec. 101.28 (as amended by T.D. 5349, 1944 Cum.Bull. 639)

"*Initiation Fees.*—Any amount paid as initiation fees to a club or organization coming within the provisions of section 1710 is subject to the 20 per cent tax imposed by the Code, as amended (a) if such fees amount to more than $10, or (b) if the dues or membership fees (not including initiation fees) of an active resident annual member are in excess of $10 per year.

"Under the Code the term 'initiation fees' includes any payment, contribution, or loan required as a condition precedent to membership, whether or not any such payment, contribution, or loan is evidenced by a certificate of interest or indebtedness or share of stock, and irrespective of the person or organization to whom paid, contributed, or loaned. It is not material whether the applicant has any hope or expectation of a return of his payment upon resignation, death, or other circumstances, nor is it material to whom he pays the money. For instance, if a golf club requires incoming members as a condition precedent to membership to purchase either from it or from retiring members a share of stock, the tax attaches to any such payment for the stock regardless of the fact that it represents a property interest in the assets of the club. Likewise, if the purchase of a share of stock in a landholding corporation is a necessary precedent to membership in the club, the amount paid for such share of stock is taxable. In the case of a transfer of stock from a retiring member the club should collect the tax on the amount paid by the new member for the stock as well as tax on any transfer fee required from the new member."

The scope of this definition of initiation fees seems to be broad enough to include the payment by the plaintiffs in this case, despite the by-laws provision that the certificate constitutes "life membership", which, as I have said, is not conclusive; and despite also the fact that the kind of payment made in this case by the plaintiffs is probably not within the ordinary understanding and practice of what is an initiation fee. Probably the general understanding of an initiation fee required to be made to acquire membership in a club is where a new member is elected to membership in a going club and the initiation fee is required in the nature of equalizing the position of the old members with the new members, with respect to their interests in the club assets.

If, therefore, the common understanding of the terms "initiation fee" and "life membership" are to be applied here, it seems that the kind of payment made by the plaintiffs does not clearly come within the general understanding of either.

There is no evidence in this case that the terms "initiation fees" and "life membership" have any certain and definite meaning in their application to the subject matter here involved; and counsel have not referred the court to any applicable judicial opinion as to the meaning of either term, with the exception of Biddle v. Rothensies, C.C.H. 1942, 2 U.S.T.C.Civil No. 1762, U.S.D.C. Eastern District of Pennsylvania, dealing with what was called a proprietary membership in the well-known Merion Cricket Club of Philadelphia. While in that case the membership was held to be equivalent to a life membership as referred to in the statute, I do not find the conclusion reached necessarily controlling in principle of this case where there is a different factual situation.

It is clear enough from what has been said that there is a very meager basis in the evidence for the decision on the point. Looking at the matter from a practical and realistic standpoint, what occurred is simply this. Certain residents and property owners of a particular neighborhood decided to build and opertate a swimming pool as an additional recreation facility. To defray the cost, individuals owning in whole or in part 600 separate properties in the neighborhood agreed to contribute the sum of $125 each to the project. In carrying out the plan a corporation was formed which authorized the issuance of so-called life membership certificates to 600 house or property holders, and evidently to meet the current cost of operation of the pool when built, the certificate holders were required to pay annual dues of $10 for the use of the pool. The question is whether payments so made are more properly to be called initiation fees or the acquisition of life membership. Neither term would seem to be precisely applicable. Clearly the mere designation of the certificate as constituting life membership is not of itself controlling. The nature and effect of the whole transaction is the more important consideration.

While the question is certainly not free from great difficulty, I take the view that looking at the realities of what occurred, the payments are more nearly to be considered initiation fees than constituting life membership. As the statute does not define the term "life membership" (which is non-taxable) and as the Regulation as to initiation fees does in terms seem to include the kind of a payment made by the plaintiffs in this case, the better view seems to be that the payment would be taxable as an initiation fee, if the Twinbrook Corporation should be held to be a social, athletic or sporting organization.

For these reasons I conclude that the plaintiffs are entitled to a judgment in their favor for the return of the $25 tax paid by them. The Clerk is instructed to enter judgment accordingly in favor of the plaintiffs for $25.