**Conrad W. FISHER, Plaintiff,**

v.

**James L. McCRORY, Defendant.**

**Civ. No. 108 L.**

United States District Court
D. Nebraska.

May 31, 1958.

Roger Dickeson (Mason, Knudsen, Dickeson & Berkheimer) Lincoln, Neb., Thomas M. Davies (Healey, Davies, Wilson & Barlow) Lincoln, Neb., for plaintiff.

Dean W. Wallace, Asst. U. S. Atty., Lincoln, Neb., Ernest C. Friesen, Jr., Atty., Dept. of Justice, Washington, D. C., for defendant.

VAN PELT, District Judge.

Plaintiff is a member of the Eastridge Recreational Association, a non-profit Nebraska corporation, hereinafter called the Association. Defendant is Director of Internal Revenue for the District of Nebraska. This is a civil action for refund of excise taxes assessed for the years 1955, 1956 and 1957 and collected

by the Association from plaintiff and paid to defendant under Sections 4241 and 4242 I.R.C.1954, 26 U.S.C.A. §§ 4241, 4242. The basic facts relating to the assessment, collection and payment of the taxes and the filing and disallowance of claims for refund have been stipulated.

The parties agree that there are three basic issues before the Court. They are

1) Whether the Association is a social, athletic or sporting club or organization within the meaning of Section 4241 of the Internal Revenue Code of 1954.

2) Whether the bond purchased by plaintiff is in fact requisite to membership in the Association and so taxable as initiation fees within the provisions of Section 4241(a) (2) of the Internal Revenue Code of 1954.

3) Whether the dues of plaintiff as an annual resident member of the Association are more than $10 so that all dues paid to the Association are subject to tax within the provisions of Section 4241 (a) (1) of the Internal Revenue Code of 1954.

The evidence establishes that prior to 1954 Strauss Bros., Lincoln, Nebraska, builders, purchased land east of Lincoln and began development of an addition, later annexed to the City, known as Eastridge; that all houses in the area have been built by Strauss Bros.; that the area is peopled by persons of middle class incomes; that largely they are younger people; that the percentage of children in the area is above the city average. Plaintiff testified that there were fourteen families in what he termed his block, with 42 children.

In 1954 a relatively small group of Eastridge residents began to discuss the need for swimming facilities especially for the children. At that time the nearest public pool was four to five miles away and there was then no plan for a public pool closer. The testimony shows that the City has now established two other pools, and altho the distance is not shown in the record, the Court from his acquaintance with Lincoln knows that for most Eastridge residents the new University Place pool is almost the same distance away as the pool called "Muny". Investigation outlined in the testimony, but unnecessary to be set forth here, resulted in the decision to construct swimming facilities, and the incorporation in December, 1954 of the non-profit association first above named. Its purpose, so far as material here, as shown by Exhibit 1A, was:

"To provide for the use of members of the association, their families and guests a swimming pool to be situated in or near Eastridge Addition to Lincoln, together with such equipment as shall be necessary or desirable for the safe and sanitary operation of such swimming pool and full enjoyment thereof.

"To buy, sell, lease, and mortgage, or otherwise encumber real and personal property for the purpose of maintaining suitable swimming and recreational facilities."

At the organizational meeting held December 7, 1954, as shown by Exhibit C, proposed by-laws were unanimously approved by the members present at the meeting. A copy appears in the minute book of which Exhibit B is a true and correct photostatic copy. At a time not shown by the evidence, many pen or pencil changes or notations have been made thereon. There is also in evidence Exhibit 2D, being a copy of the by-laws of the Association, which became effective September 9, 1955. Article II is identical in each and provides:

"The purpose for which this Association is formed is to promote the health and general welfare of its members and in pursuance thereof to construct, own and operate a swimming pool and other recreational facilities, together with such incidental objects as are appropriate in the conduct of its activities, in the County of Lancaster and State of Nebraska for the exclusive use of its members and their families."

The Court notes that under both the articles and by-laws, there can be con-

structed, owned and operated, not only a swimming pool, but other recreational facilities.

The by-laws provide for officers and committees to carry on the purposes of the Association. Among them (See Article X)—a program committee which, subject to the authority of the board of directors "shall prepare the program of instruction & entertainments". Pool rules and regulations are detailed. Guests are permitted under paragraph numbered 3 of Article XI, and guest rates are set, and in paragraph numbered 3(h) of Article XI, appears this statement "All guest rates subject to 20% tax". Provision is made in the by-laws, Exhibit 2D, for private parties from 7:30 p. m. to 9:30 p. m. Tuesday, Thursday and Saturday. The testimony shows that private parties are still being held but not on the days set forth in the by-laws. Children under the age of 14 are to be accompanied by their parents after 5:00 p. m.

The pool and facilities were constructed in 1955 by Strauss Bros. after bids from two other contractors had been rejected. The pool was opened July 4, 1955, with ceremonies described in the testimony. It is at the east side of the Addition, the location being clearly shown on Exhibit 6. It was constructed on a lot given by Strauss Bros. who later donated an adjacent lot used for parking of cars.

The testimony shows the pool is used approximately 80% by children and 20% by adults. The bringing of food or drinks to the pool facilities is forbidden; smoking in a limited area reserved for that purpose, has only recently been permitted; there are a few wooden benches, such as shown in Exhibit 18, where persons can be seated. The general facilities, altho adequate, are not, and the Court so finds, of the "country club" type. The degree of luxury is not the measuring stick, however, in determining whether the Association is a social or athletic club or organization under the applicable sections of the Internal Revenue Code.

Plaintiff, and some of his witnesses, contend and his counsel in argument urges, that in determining whether an organization is an athletic one, that the controlling feature is whether primarily it is for competitive events. There is testimony that swimming meets and competitions are not held. There is other testimony that on occasions there has been limited competition and that on one occasion the Lincoln Swim Club held a swimming meet for children of ten and under. The only diving board is a low board. The pool is not suitable for diving competition. The pool was planned in a fan shape to provide a wide shallow end. The evidence establishes that it was not one of the purposes to prepare children or adults for such competition, nor to hold such competitions. However, the Court does not regard this as controlling. The primary purpose, the Court finds, was the laudatory one of providing the children of Eastridge an adequate, sanitary and regulated place to wade and swim or learn to swim. There are people in Eastridge with children who do not belong to the Association. The present eligible membership is 463.

The Court believes, however, that it was within the thinking of the incorporators that the Association could be something more than the operator of a swimming pool. Both the articles and by-laws, as above mentioned, authorize other recreational facilities. The program committee is allowed to prepare entertainments. The facilities are available for a fee fixed by the by-laws and are used by members for entertainment of their friends on certain nights to the exclusion of the other members, unless the member who has first reserved the pool for a party, through contacting the lifeguard, consents to other parties also using it.

Exhibit F, being the minutes of the Board of Directors' meeting of August 3, 1955, contains the following:

"It was moved by Brogden that the fee for private parties be $10.00 minimum, or .50 per person, which ever is greater, and with a limit of

50 persons. Seconded by Phillips and Harding, voted unanimously."

According to Exhibit 3 these pool rentals were 2% of the Association's income in 1957, and 3% in 1955 and 1956. Guest charges each year approximated 11% of the total income. Dues thus provide 86% or 87% of the Association's income and guests and parties 13% or 14%.

Defendant has cited the opinion of March 27, 1958 of the United States Court of Appeals for the Fourth Circuit in the case of United States v. McIntyre, 253 F.2d 728. Plaintiff's counsel, who in the trial brief furnished the Court, had placed great reliance upon the opinion of the District Court in this case, 151 F. Supp. 388, saying it was "identical in all material particulars to the present case" now take the position that the opinion, which is written by Judge Haynsworth "lacks logical direction". Counsel associated with plaintiff's counsel say it "establishes no new principles of law". Both counsel ably present what they regard as errors in the Court's reasoning. Both suggest that the Court not follow the opinion. The Court is not in agreement with their position. The McIntyre opinion is a decision of the United States Court of Appeals for the Fourth Circuit, in a case which as to certain aspects is identical with this case. The Court is therefore persuaded that it should follow the McIntyre case.

Applying the reasoning of the McIntyre case to the testimony introduced herein, the Court finds that the Eastridge Recreational Association is a social and athletic club within the meaning of those terms as used in the Internal Revenue Code.

The Court turns next to determining whether the $75 paid by plaintiff in 1954 and for which a bond was issued by the Association in form shown by Exhibit 5, is taxable as an initiation fee. The evidence shows that those who joined originally paid $75 for the bond; that those who joined after December 1, 1954 paid $125.

Section 4241(a) of the Internal Revenue Code, 1954, provides in part:

"A tax equivalent to 20 percent of any amount paid as initiation fees to such a club or organization, if such fees amount to more than $10 * * *".

Section 4242 of the Code defines initiation fees in sub-paragraph (b) as follows:

"*Initiation fees.*—As used in this part the term 'initiation fees' includes any payment, contribution, or loan, required as a condition precedent to membership, whether or not any such payment, contribution, or loan is evidenced by a certificate of interest or indebtedness or share of stock, and irrespective of the person or organization to whom paid, contributed, or loaned."

The original by-laws provided:

Article VII.

"Section 2. For the purpose of providing a sufficiency of the necessary funds to reimburse Strauss Bros., all members accepted into membership after Dec. 1, 1954 as a condition of membership, *shall be required* to purchase a bond in the amount of $125.00. (Emphasis is the Court's.)

"Section 3. (a) Bonds shall not be transferable and shall contain an appropriate notation to that effect on the face thereof.

"(b) Except for payment as hereinafter provided, each Bond shall become null and void upon the date that the holder thereof sells his Trend home in Eastridge Addition to Lincoln. The time and manner in which the holder shall be paid the value of his Bond, shall be determined by the Board of Directors, provided, however, that each Bond shall be redeemed in the Chronological order in which the memberships terminate, and as soon as payment is received from an incoming member. If an owner rents his home, his bond may be redeemed provided the renter

agrees to purchase it and provided that the renter is elected to membership by the Board of Directors.

"Section 8. All fees and other charges mentioned herein and hereinafter are exclusive of taxes, if any, imposed by the Federal, State and other Governmental bodies and agencies."

The words "and hereinafter" and words "if any", are not typewritten. The time of their addition, whether before or after adoption, is not shown by the evidence.

The by-laws also provided: (Section 5, Article VI)

"(b) A receipt membership card shall be issued by the Treasurer, upon the payment of dues, to every member along with current year's identification tags for each member of his or her household other than his or her spouse."

Such cards were never issued. The witness Bowers, who was treasurer in 1955 and 1956, testified the bonds were issued in place of cards.

In the amended by-laws, Section 2, Article VII, the following is found:

"Section 2. For the purpose of providing the necessary funds to pay Strauss Bros. for the construction of the Association swimming pool, all members accepted into membership after December 1, 1954, or his or her spouse, shall be solicited to purchase a bond of the Association in the amount of $125.00."

Comparing this section with the section as it previously existed it will be noted that the words "as a condition of membership" which followed the year 1954, have been stricken and the word "required" has been changed to "solicited". The words "or his or her spouse" have also been added.

Section 3(a) is unchanged; Section 3(b) was changed only to add the words "or his or her spouse" in the second line after the words "holder thereof" and the words "or her" following the word

"his" and preceding the words "Tread home" in second and third lines.

The conclusion is inescapable that when plaintiff paid his $75 and at least until September 9, 1955 when the by-laws were amended, bond ownership was a prerequisite to family annual membership and participation.

The Court finds that the $75 paid by plaintiff in December of 1954 was a condition precedent to membership and was an initiation fee as defined in Section 4242 of the Internal Revenue Code. It follows, and the Court finds, that it was subject to the tax imposed under Section 4241(a).

■ It is clear from the evidence that the Association through action of its members and board of directors, has attempted to change its annual dues and reduce them from $17.50 for a family membership to $8.75 annual dues for each spouse. The question is whether its intention has been effective.

■ There is nothing illegal in such an attempt. It is, as said by counsel, "well established that the taxpayer can use any legitimate means to minimize his taxes."

In Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596, we read:

"The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted."

In White v. Winchester Country Club, citing the Gregory case, supra, it is said:

"Even if one motive behind the change was a desire to reduce the tax liability, it should not prejudice the taxpayer in asserting his legal rights." White v. Winchester Country Club, 1 Cir., 1941, 117 F.2d 146, 149, reversed on other grounds, 315 U.S. 32, 62 S.Ct. 425, 86 L.Ed. 619.

Exhibit G shows that in late August, 1955 a special meeting of the Association was called for September 9, 1955 to con-

sider changes in the by-laws. Exhibit G stated, among other things:

"Accompanying this letter are the by-laws as they are proposed to be amended. If they are approved, the dues of the Association will not be subject to a Federal tax as they now are. The principle (sic) change is that the husband and wife will be separate members instead of the family being a 'member'."

Exhibit H shows that at a Board of Directors' meeting of the Association held March 11, 1956,

"It was moved by Brogden and seconded by Bowers that the dues for 1956 shall be $8.75 for each spouse except where only one spouse joins (if both are eligible) then the dues shall be $16.00 for one spouse."

At this meeting it was also arranged for the general membership to be informed. The minutes state:

"The following notations are to go out for the Annual meeting of general membership

\*  \*  \*  \*  \*  \*

"2) Dues—$8.75 for each spouse where two available except where one spouse joins $16.00."

Government's Exhibit I is a letter from the Board of Directors to Pool Members, in which we find the statement relied upon by both parties:

"The dues for the coming year are as follows:

"$17.50 per family ($8.75 for each member spouse) except;

"1) $16.00 when only one spouse is an active member

"2) $8.75 where head of household is not living with spouse."

Government's Exhibit K is a copy of the minutes of the Board of Directors' meeting of May 27, 1956. It recites that a family was accepted for use of pool prior to possession of house "upon deposit of $125 bond plus $17.50 dues."

Government's Exhibit L, being a letter to the members sent out prior to April 30, 1957, contains the statement: "Dues are $17.50".

Government's Exhibit O, being minutes of a Board of Directors' meeting, contains a list of names approved for membership, and the men only were listed.

It is a factual question for the Court to determine whether or not the Association actually accomplished the result of reducing the dues to $8.75 for each man and for each woman.

The evidence is convincing that both husbands and wives voted at meetings held in 1956 and 1957 and that their votes were counted. The by-laws provide for dues of $8.75 per member. Some of the minutes (See Exhibit H) show clearly dues of $8.75 per spouse. None of the minutes appear to have been written by lawyers. It appears to the Court that it would be unjust to permit the references in Exhibits I, K, L and O to control over the by-laws. The Court finds that the more convincing testimony preponderates in favor of plaintiff and that for the years 1956 and 1957 the annual dues were $8.75 for plaintiff and $8.75 for Mrs. Susan Fisher, his wife.

The Court finds that for the year 1955 the dues were assessed against and paid by Conrad W. Fisher in the sum of $17.50 and that no dues were assessed against or paid by Mrs. Susan Fisher for that year.

The dues for 1955 were payable by April 1, 1955. The amendments made at the meeting of September 9, 1955 were not retroactive and will not be given a retroactive effect. The testimony does not indicate that plaintiff was ever refunded any part of the $17.50 paid by him as dues for 1955. This would indicate that the Board of Directors of the Association did not regard the amendment as retroactive or attempt to make it retroactive. It is the Court's finding that plaintiff cannot recover any part of the tax paid on the dues of $17.50 paid by him for the year 1955.

This Memorandum will stand as the Court's findings of fact and conclusions

of law. However, it will not have the effect of a judgment. The attorneys for defendant will promptly prepare an order determining the amount due plaintiff, based upon the Court's conclusions herein announced, and submit the order to attorneys for plaintiff for approval as to form. It, or an order prepared by the Court if the parties cannot agree upon the form of an order, will then be signed and filed and will constitute the appealable order herein.